In the

# United States Court of Appeals
## For the Seventh Circuit

No. 02-4233

GREGORY WILLIAMS,

*Plaintiff-Appellant,*

*v.*

STATE OF WISCONSIN, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 02-C-0674—**Charles N. Clevert, Jr.**, *Judge.*

ARGUED JUNE 10, 2003—DECIDED JULY 15, 2003

Before KANNE, DIANE P. WOOD, and WILLIAMS, *Circuit Judges.*

DIANE P. WOOD, *Circuit Judge.* Parolee Gregory Williams wants to go to the Philippines to marry a woman with whom he began corresponding while he was incarcerated. He contends in this action, which he brought under 42 U.S.C. § 1983, that the State of Wisconsin and various parole officials are violating his rights to travel and marry by refusing to let him take this trip. The district court dismissed the suit with prejudice for failure to state a claim. FED. R. CIV. P. 12(b)(6). We agree that Williams cannot state a claim against the state or its officials on this basis, and we therefore affirm.

**I**

In 1991 Williams was convicted by a Wisconsin state court and sentenced to a term of imprisonment. The record does not disclose either Williams's crime or the length of his sentence, but six years after he was incarcerated, he apparently began to correspond with Maria Dela Rosa—a Filipino citizen residing in Mandaloyong City. The pair eventually agreed to marry (the record again is silent on the date), and in May 2001, Williams was paroled.

After his release Williams took up residence in Milwaukee and attempted to arrange a face-to-face meeting with Dela Rosa. In January 2002, Williams's father wrote a letter to President Bush asking for help bringing Dela Rosa to the United States. This letter made its way to INS officials, who responded that Williams already had applied for a fiancée visa and that State Department officials in the Philippines had refused to issue a tourist visa to Dela Rosa for fear that she would remain in the United States illegally. The agency also opined that unless Dela Rosa became related to a U.S. citizen or developed professional skills in short supply in the United States, she had only a remote chance of immigrating successfully.

Faced with these problems bringing Dela Rosa to Wisconsin, Williams proposed to leave the country to meet her. He first asked his parole agent for a travel permit to visit the Philippines. The agent refused, and his decision was upheld by various parole administrators, who noted that Wis. Admin. Code § DOC 328.06(8) flatly states that "[a]uthorization to travel to foreign countries shall not be granted to clients."

After exhausting his administrative remedies, Williams turned to federal court. In July 2002 he filed this action contending that § DOC 328.06(8) unconstitutionally restricts his rights to travel and marry. Williams sought

damages as well as an affirmative injunction commanding the parole officials to permit him to travel to the Philippines. Upon the defendants' motion, the district court dismissed the suit for failure to state a claim, concluding that the Constitution did not oblige the defendants to accommodate Williams's request. The court explained that the state may reasonably restrict the rights of parolees like Williams and that Wisconsin has legitimate penological reasons for prohibiting the proposed trip.

## II

Before turning to the merits of Williams's appeal, we pause to consider whether this case was properly brought under § 1983, or if it should have been presented as a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Neither party has raised this point, and we thus must also consider whether we have any responsibility to do anything but evaluate the claim as presented. The short answer to the first question is that, under the law of this circuit, the case should have been brought as a § 2254 action. Nevertheless, we consider it so clear that the underlying legal point Williams is making is without merit that we see no reason to do anything but to affirm the district court's dismissal, rather than convert it to a dismissal without prejudice and give Williams the opportunity to refile his claim as a petition for a writ of habeas corpus (a step he has not yet taken, for purposes of counting first or second petitions).

For prisoners, the difference between a civil rights action and a collateral attack is easy to describe. Challenges to conditions of confinement (such as pollution in the prison or deliberate indifference to serious medical needs) fall under § 1983. *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). Attacks on the fact or duration of the confinement come under § 2254. *Id.*; *Moran v. Sondalle*, 218 F.3d 647,

650-51 (7th Cir. 2000) (per curiam). For parolees, the question is more metaphysical, because the "conditions" of parole *are* the confinement. Requirements that parolees stay in touch with their parole officer, hold down a job, steer clear of criminals, or (as in Williams's case) obtain permission for any proposed travel outside the jurisdiction, are what distinguish parole from freedom. It is because of these restrictions that parolees remain "in custody" on their unexpired sentences and thus may initiate a collateral attack while on parole. See *Jones v. Cunningham*, 371 U.S. 236, 242-43 (1963); see also *Maleng v. Cook*, 490 U.S. 488, 491 (1989) (per curiam).

Here Williams wants relief from one of the restrictions imposed by his parole—a ban on international travel. This court in *Drollinger v. Milligan*, 552 F.2d 1220 (7th Cir. 1977), confronted a similar request when an Indiana probationer brought a § 1983 action challenging eight restrictions of her probation. Among other things, the probationer could not get a roommate, leave the house at night, change jobs, accept gifts, visit her ex-husband or his parents, act so as "to cause anyone to question that she is violating the law," or skip church. *Id.* at 1223-24.

We concluded that the probationer's contentions should have been presented in a collateral attack. The court explained that the challenged restrictions "define the perimeters of her confinement." *Id.* at 1224. Thus, eliminating or changing one of the restrictions would alter the confinement: "figuratively speaking, one of the 'bars' would be removed from [the probationer's] cell." *Id.* at 1225; see also *Clark v. Prichard*, 812 F.2d 991, 997-99 (5th Cir. 1987) (concurring opinion) (same result for a probationer who was required to work in lieu of collecting welfare benefits).

*Drollinger* remains the law in this circuit, and we have no reason to question its authority here. The question is

rather what we should do about the fact that Williams should have brought this as a § 2254 action. Normally, collateral attacks disguised as civil rights actions should be dismissed without—rather than with—prejudice. That resolution allows the plaintiff to decide whether to refile the action as a collateral attack after exhausting available state remedies. *Pischke v. Litscher*, 178 F.3d 497, 500 (7th Cir. 1999); *Copus v. City of Edgerton*, 96 F.3d 1038, 1039 (7th Cir. 1996) (per curiam). In this case, however, both because neither Williams nor the state raised this point, and because any collateral attack on this basis would be futile, we have chosen not to change the nature of the dismissal. We instead have evaluated the claim exactly as it was presented, under § 1983.

## III

On the merits, there are a number of problems with Williams's action. First, he has attempted to sue the State of Wisconsin, the state's department of corrections (a state agency), and three parole officials in their *official* capacities. (Williams did not include the words "official capacity" in the caption of the complaint. The district court, however, noted in its written memorandum that Williams's lawyer had abandoned any individual-capacity claims at a telephone conference. And although the record does not contain a transcript of this conference, Williams on appeal does not dispute the district court's characterization of that call.) Williams's decision to forego an individual-capacity suit blocks his claims for damages under § 1983. By suing the individual defendants in their official capacities, Williams made the state the only interested party, *Kentucky v. Graham*, 473 U.S. 159, 166 (1985), and a state is not a "person" subject to a damages action under § 1983, *Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002). The defendants also assert that the

Eleventh Amendment bars any damages claims. See, *e.g.*, *Quern v. Jordan*, 440 U.S. 332, 338-40 (1979). But any constitutional problem that may exist is subordinate to the statutory deficiency. Suits against states for damages should be resolved on the ground that they do not come within § 1983, not because states are protected by the Eleventh Amendment. *Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 779 (2000); *Power v. Summers*, 226 F.3d 815, 818 (7th Cir. 2000).

To the extent Williams is seeking injunctive and declaratory relief against ongoing or anticipated violations of his rights to travel and marry, he is not barred at the outset from proceeding. Official-capacity suits against state officials seeking prospective relief are permitted by § 1983, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989), and under *Ex parte Young*, 209 U.S. 123 (1908), they are not barred by the Eleventh Amendment. See, *e.g.*, *Verizon Md. Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645-48 (2002).

That brings us to the merits of Williams's claims that his constitutional rights to travel and to marry have been violated by Wisconsin. It is true that the Supreme Court has recognized that under various constitutional provisions including the privileges and immunities clauses of Article IV and the Fourteenth Amendment, ordinary citizens have a protected right to interstate travel. See, *e.g.*, *Saenz v. Roe*, 526 U.S. 489, 498-504 (1999). But, like prisoners, see *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976), parolees such as Williams have no right to control where they live in the United States; the right to travel is extinguished for the entire balance of their sentences. See *Alonzo v. Rozanski*, 808 F.2d 637, 638 (7th Cir. 1986); *Bagley v. Harvey*, 718 F.2d 921, 924 (9th Cir. 1983); see also *Jones v. Helms*, 452 U.S. 412, 419-20 (1981) (explaining that a person who has committed an offense

punishable by imprisonment does not have an unqualified right to leave the jurisdiction prior to arrest or conviction).

More fundamentally, international travel is not the same as interstate travel, even for free persons. See, *e.g.*, *Haig v. Agee*, 453 U.S. 280, 306-07 (1981); *Califano v. Aznavorian*, 439 U.S. 170, 176 (1978). For persons still subject to the restrictions of parole or its equivalent, this distinction is even more important. To begin with, the state has no inherent right to enforce its criminal laws or restrictions imposed under those laws outside the United States. See RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW § 432(1) (1987). Only with the permission of the foreign country in question may the law enforcement officers of one country exercise powers in another one. *Id.* § 432(2). Thus, Williams's suggestion that the State of Wisconsin could just send him to the Philippines in the custody of his parole officer is not a realistic one. A host of formalities, which are out of the control of the State of Wisconsin, would have to be satisfied before such a ploy was effective: the State Department of the United States (and perhaps the Justice Department as well) would need to agree to ask permission for this move from the Filipino authorities, and the latter would have to agree. Wisconsin thus has entirely rational reasons for flatly prohibiting parolees from traveling outside the country.

The fact that the state permits interstate travel under some circumstances for parolees in no way undercuts its rule with respect to international travel. The states are bound together by the federal Constitution, after all, and the Constitution itself contains a number of provisions that ensure the possibility of interstate cooperation in the enforcement of criminal law. The list includes the Full Faith and Credit Clause of Article IV, sec. 1; the Interstate Extradition Clause of Article IV, sec. 2, cl. 2; and the Interstate Compact Clause of Article I, sec. 10, cl. 3. The last of those three is especially relevant, as there is in fact

an Interstate Compact for Adult Offender Supervision, which Wisconsin has implemented in Wis. Stat. § 304.16. The compact provides a framework for the supervision of adult offenders who are authorized to travel across state lines, "in such a manner as to enable each compacting state to track the location of offenders, transfer supervision authority in an orderly and efficient manner, and, when necessary, return offenders to their original jurisdictions." *Id.* § 304.16(1)(a). Nothing of the sort exists internationally, and indeed, Article I, sec. 10, cl. 1 of the Constitution forbids individual states from entering into any international treaties.

The fact that the right to interstate travel and the right to marry have been described as fundamental rights adds nothing to Williams's arguments. We accept Williams's assertion that he wants to go to the Philippines so that he can marry Dela Rosa, but he too readily assumes that the state's travel restriction (which we have already found to be rationally based) amounts to an absolute prohibition on his right to marry. It is true that *Turner v. Safley*, 482 U.S. 78 (1987), recognizes the fundamental right of prisoners to marry—a right that may be limited only for sound penological reasons. *Id.* at 94-100. But no one here has forbidden Williams from getting married or from marrying Dela Rosa. Compare *id.* at 96-97; *Martin v. Snyder*, 329 F.3d 919, 920 (7th Cir. 2003). At most, the state's rule has affected either the timing or the place of his marriage plans. This type of incidental interference with the right to marry does not give rise to a constitutional claim if there is "some justification" for the interference. *Keeney v. Heath*, 57 F.3d 579, 580-81 (7th Cir. 1995); see also *Wright v. MetroHealth Med. Ctr.*, 58 F.3d 1130, 1135-36 (6th Cir. 1995); *Parks v. City of Warner Robins*, 43 F.3d 609, 613 (11th Cir. 1995); *cf. Berrigan v. Sigler*, 499 F.2d 514, 519-20 (D.C. Cir. 1974) (parolees could be prohibited from meeting

with religious leaders in Vietnam because the restriction burdened First Amendment rights only "tangentially"). Here, as we have already noted, there is ample justification for the restriction: the state risks losing all right to supervise Williams the moment he is outside the jurisdiction of the United States.

## IV

There is no set of facts that could be imagined that would change this assessment of the legality of Wisconsin's ban on international travel for parolees. The district court accordingly was correct to dismiss this case under Rule 12(b)(6), and we AFFIRM its judgment.

A true Copy:

      Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*
