**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

WILLIAM CECIL THORNTON,
*Plaintiff-Appellant*,

v.

EDMUND G. BROWN, JR.,[*] Governor
of California; MATTHEW CATE,
Secretary of Corrections; LEWIS,
John Doe, Parole Unit Supervisor;
MARK JOSEPH, Parole Agent;
CHRISTINE CAVALIN, Parole Agent;
JOHN DOE #1, Parole Agent,
*Defendants-Appellees*.

No. 11-56146

D.C. No.
3:10-cv-01583-
RBB

OPINION

Appeal from the United States District Court
for the Southern District of California
Ruben B. Brooks, Magistrate Judge, Presiding

Argued and Submitted
November 9, 2012—Pasadena, California

Filed July 31, 2013

---

[*] The Honorable Edmund G. Brown, Jr., is substituted for his predecessor, The Honorable Arnold Schwarzenegger, as Governor of California. Fed. R. App. P. 43(c)(2).

Before:  Myron H. Bright,[**] Susan P. Graber,
and Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Graber;
Dissent by Judge Ikuta

**SUMMARY**[***]

**Civil Rights**

The panel reversed the district court's order dismissing, pursuant to Fed. R. Civ. P. 12(b)(6), a civil rights action involving a constitutional challenge to the imposition and enforcement of two conditions of plaintiff's parole:  a residency restriction and a requirement that plaintiff submit to electronic monitoring using a Global Positioning System device.

The district court, citing *Preiser v. Rodriguez*, 411 U.S. 475, 489–90 (1973), and *Heck v. Humphrey*, 512 U.S. 477, 487 (1994), concluded that habeas corpus provided the exclusive federal remedy for plaintiff's claims.  The panel held that an action which challenges the conditions of parole is not barred by *Heck* if it is not a collateral attack on *either* the fact of a parolee's confinement as a parolee *or* the parolee's underlying conviction or sentence.  The panel held

---

[**] The Honorable Myron H. Bright, Senior Circuit Judge for the United States Court of Appeals for the Eighth Circuit, sitting by designation.

[***] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

that because in this case plaintiff challenged just two parole conditions, which were imposed through a discretionary decision of the Department of Corrections and Rehabilitation, his success would neither result in speedier release from parole nor imply, either directly or indirectly, the invalidity of the criminal judgments underlying that parole term. Therefore *Heck* did not bar him from proceeding under 42 U.S.C. § 1983.

Dissenting, Judge Ikuta stated that as a matter of California law, plaintiff's challenges, if successful, would necessarily demonstrate that a portion of his underlying sentence was invalid. Judge Ikuta stated that because the Supreme Court has held such challenges must be brought in a habeas petition, not under § 1983, she would affirm the district court.

## COUNSEL

Karen Gal-Or (argued) and Craig E. Stewart, Jones Day, San Francisco, California, for Plaintiff-Appellant.

Jose A. Zelidon-Zepeda (argued), Deputy Attorney General; Kamala D. Harris, Attorney General of California; Jonathan L. Wolff, Senior Assistant Attorney General; Thomas S. Patterson, Supervising Deputy Attorney General, San Francisco, California, for Defendants-Appellees.

## OPINION

GRABER, Circuit Judge:

In this civil rights action under 42 U.S.C. § 1983, Plaintiff William Cecil Thornton brings a constitutional challenge to the imposition and enforcement of two conditions of his parole: a residency restriction and a requirement that he submit to electronic monitoring using a Global Positioning System ("GPS") device. Citing *Preiser v. Rodriguez*, 411 U.S. 475, 489–90 (1973), and *Heck v. Humphrey*, 512 U.S. 477, 487 (1994), the district court concluded that habeas corpus provided the exclusive federal remedy for Plaintiff's claims and dismissed the action under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

The Supreme Court has not directly considered the application of the *Heck* doctrine to § 1983 actions that challenge conditions of parole. Among the courts of appeals, only the Seventh Circuit has done so, in *Drollinger v. Milligan*, 552 F.2d 1220 (7th Cir. 1977), and *Williams v. Wisconsin*, 336 F.3d 576 (7th Cir. 2003). Consistent with Supreme Court precedent and that of our sister circuit, we hold that such an action is not barred by *Heck* if it is not a collateral attack on *either* the fact of a parolee's confinement as a parolee *or* the parolee's underlying conviction or sentence. Because we conclude that Petitioner's action is not such an attack, we reverse and remand.

## BACKGROUND

California's Sex Offender Registration Act requires certain convicted sex offenders to register with law enforcement officials in the communities in which they

reside. Cal. Penal Code §§ 290(c), 290.005(a). California's Sexual Predator Punishment and Control Act of 2006—also known as Jessica's Law or Proposition 83—imposes several requirements that apply to parolees who, as sex offenders, are subject to that duty to register. One of those requirements is a residency restriction according to which a person who is required to register may not "reside within 2000 feet of any public or private school, or park where children regularly gather." *Id.* § 3003.5(b). Another requirement is that any person who is convicted of a "registerable sex offense" as defined by section 290(c)—a section which enumerates various sex offenses under California law—must submit to electronic monitoring by a GPS device, either for the duration of that person's parole or for life. *Id.* §§ 3000.07(a), 3004(b). The state's Department of Corrections and Rehabilitation ("the Department") also has discretionary authority to require any parolee to submit to electronic monitoring. *See id.* § 3010(a) (providing that "the [Department] may utilize continuous electronic monitoring to electronically monitor the whereabouts of persons on parole").

In 2011, a California trial court ruled that section 3003.5(b)'s residency restriction, when applied to all registered sex offenders as a "blanket" parole condition, was unconstitutional. *In re Taylor*, 147 Cal. Rptr. 3d 64, 67–68 (Ct. App. 2012). The appellate court affirmed the lower court's order, which prohibited the "blanket enforcement of the residency restriction"; but the court also held that the Department "may, after consideration of a parolee's particularized circumstances, impose a special parole

condition that mirrors section 3003.5(b) or one that is more or less restrictive." *Id.* at 83–84.[1]

In 1987, Plaintiff pleaded guilty in Tennessee to sexual battery. In 2006, he was convicted in California of buying or receiving stolen property and was sentenced to a 16-month term of imprisonment. California law requires a period of parole or supervised release following such a prison term, Cal. Penal Code § 3000, and when Plaintiff was released in June 2008, he received a three-year parole term. Citing Plaintiff's previous Tennessee offense, the Department imposed, as parole conditions, a GPS monitoring requirement (pursuant to section 3010 of the Penal Code) and a residency restriction prohibiting him from living within 2000 feet of schools or parks where children gather (pursuant to section 3003.5(b)). Plaintiff was later convicted of robbery and was sentenced to a three-year prison term for that offense, pursuant to California Penal Code section 1170. Again, California law required a term of parole to follow his sentence. Cal. Penal Code § 3000. While he was in prison, the Department issued new parole conditions that would apply upon his release. Those conditions included the same GPS monitoring requirement and residency restriction.

During his second prison term, Plaintiff filed this action under 42 U.S.C. § 1983, seeking both monetary and injunctive relief. He alleges that the Department violated his constitutional rights by imposing the GPS monitoring requirement and residency restriction as parole conditions and by enforcing those conditions in an arbitrary or discriminatory manner. The district court reasoned that, as a

---

[1] The California Supreme Court has granted the state's petition for review of that ruling. *In re Taylor*, 290 P.3d 1171 (Cal. 2013).

parolee, Plaintiff was "in custody" within the meaning of the federal habeas corpus statute, 28 U.S.C. § 2254. It further reasoned that, under the *Heck* doctrine, a habeas petition is the exclusive means by which Plaintiff can challenge a condition of his parole. Accordingly, the district court dismissed the claim.

Plaintiff timely appeals. We review de novo the legal issues presented here. *Barker v. Riverside Cnty. Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009).

## DISCUSSION

### A. Immunity

Plaintiff's claims against the Governor, the Secretary of Corrections, and a Parole Unit Supervisor are limited to injunctive relief. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citing Eleventh Amendment considerations and holding that § 1983 does not permit suits for damages against states); *Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997) (holding that "state officials sued in their official capacities are not 'persons' within the meaning of § 1983" except when "sued for *prospective injunctive relief*"). Neither absolute nor qualified immunity bars Plaintiff's claims against those defendants. *See, e.g.*, *Buckwalter v. Nev. Bd. of Med. Exam'rs*, 678 F.3d 737, 747 (9th Cir. 2012) ("Absolute immunity is not a bar to injunctive or declaratory relief."); *Vance v. Barrett*, 345 F.3d 1083, 1091 n.10 (9th Cir. 2003) ("[A] defense of qualified immunity is not available for prospective injunctive relief.").

Absolute immunity does bar Plaintiff's claims for damages against his parole officers for imposing allegedly

unconstitutional parole conditions.     We have held that absolute immunity "extend[s] to parole officials for the 'imposition of parole conditions'" because that task is "integrally related to an official's decision to grant or revoke parole," which is a "quasi-judicial" function. *Swift v. California*, 384 F.3d 1184, 1189 (9th Cir. 2004) (quoting *Anderson v. Boyd*, 714 F.2d 906, 909 (9th Cir. 1983)). Both parole conditions currently in effect were imposed through particularized and discretionary decisions by parole officers. The GPS condition was imposed pursuant to the Department's discretionary authority under section 3010 of the California Penal Code,[2] and the residency restriction "mirrors" section 3003.5(b), which, as interpreted by the California courts, permits such a condition only "after consideration of a parolee's particularized circumstances." *Taylor*, 147 Cal. Rptr. 3d at 83–84. Accordingly, the parole officers are absolutely immune with respect to Plaintiff's claims for damages arising from the imposition of those conditions.

Absolute immunity does not extend, though, to Plaintiff's claim that the parole officers enforced the conditions of his parole in an unconstitutionally arbitrary or discriminatory manner. Parole officers' "immunity for conduct arising from their duty to supervise parolees is qualified." *Anderson*, 714 F.2d at 910.     Plaintiff's allegation that the officers enforced the residency restriction against him but not against

---

[2] Although sections 3000.07(a) and 3004(b) of the Penal Code require the Department to impose a GPS monitoring condition for any parolee convicted of a "registerable sex offense" under section 290(c), that subsection lists only crimes under California law. Thus, Plaintiff's condition, which relates to a conviction under Tennessee law, reflects an exercise of the Department's discretion under section 3010.

similarly situated parolees relates to the manner in which Defendants implemented that condition—an element of their supervisory function. Absolute immunity therefore does not apply to Plaintiff's enforcement-based claim. However, the district court also dismissed this claim as barred by qualified immunity. On appeal, Plaintiff does not challenge that ruling except to the extent that it bars him from pursuing injunctive relief. Because qualified immunity does not bar injunctive relief, *Vance*, 345 F.3d at 1091, Plaintiff may assert his non-monetary claim arising from the allegedly discriminatory enforcement of his parole conditions.

## B. *Heck* Doctrine

With respect to his claims for injunctive relief, the question remains whether Plaintiff appropriately brought those claims under § 1983 instead of through a petition for habeas corpus.

Persons subject to state custody generally "have two potential avenues to remedy violations of their federal constitutional rights: a habeas petition under 28 U.S.C. § 2254, and a civil suit under 42 U.S.C. § 1983." *Osborne v. Dist. Atty's Office*, 423 F.3d 1050, 1053 (9th Cir. 2005) (citing *Heck*, 512 U.S. at 480). In *Preiser*, the Supreme Court addressed "'the extent to which § 1983 is a permissible alternative to the traditional remedy of habeas corpus,'" *Docken v. Chase*, 393 F.3d 1024, 1027 (9th Cir. 2004) (quoting *Preiser*, 411 U.S. at 500), and held that § 1983 implicitly excludes from its coverage claims that lie "within

the core of habeas corpus," *Preiser*, 411 U.S. at 487–88.[3] Thus, a person who is in state custody may not use § 1983 to challenge "the very fact or duration of . . . confinement" by seeking "a determination that he is entitled to immediate release or a speedier release from that imprisonment"—for example, an injunction requiring prison officials to grant good-time credits that would shorten his prison term. *Id.* at 499–500. In *Heck*, the Court elaborated on the exception set forth in *Preiser*, holding that a state prisoner may not maintain a § 1983 claim for damages if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence" with respect to a prior judgment that has not been nullified previously. *Heck*, 512 U.S. at 484, 487.

Not all claims that are cognizable in habeas are precluded from § 1983's scope under that standard; rather, there are "instances where the same constitutional rights might be redressed under either form of relief." *Wolff v. McDonnell*, 418 U.S. 539, 579 (1974); *see also Osborne*, 423 F.3d at 1055 (rejecting "the notion that a claim which *can* be brought in habeas *must* be brought in habeas").[4] Thus, the fact that a

---

[3] The Supreme Court rested this conclusion on its observation that "the language of the habeas statute is more specific, and the writ's history makes clear that it traditionally 'has been accepted as the specific instrument to obtain release from [unlawful] confinement.'" *Wilkinson v. Dotson*, 544 U.S. 74, 79 (2005) (alteration in original) (quoting *Preiser*, 411 U.S. at 486–87).

[4] *See also Preiser*, 411 U.S. at 499 (noting that habeas and § 1983 may provide alternative means to challenge prison conditions); *Skinner v. Switzer*, 131 S. Ct. 1289, 1299 (2011) (raising, without deciding, the question whether "habeas [is] the sole remedy, or even an available one," for certain types of claims).

§ 1983 plaintiff is "in custody" and therefore may file a habeas petition challenging the unlawfulness of that custody does not, by itself, determine whether the § 1983 claim is available. Instead, a claim that meets the statutory criteria of § 1983 may be asserted unless its success would release the claimant from confinement or shorten its duration, *Preiser*, 411 U.S. at 500, or would necessarily imply the invalidity of the conviction or sentence, *Heck*, 512 U.S. at 487. *See also Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005) (explaining that *Preiser* and *Heck* bar a § 1983 claim only if that claim will either result in a "speedier release" from custody or "a judicial determination that necessarily implies the unlawfulness of the State's custody").[5]

A state parolee is "in custody" for purposes of the federal habeas statute, *Jones v. Cunningham*, 371 U.S. 236, 243 (1963), and may challenge parole conditions imposed by a state correctional department through a habeas petition under 28 U.S.C. § 2241, *Bagley v. Harvey*, 718 F.2d 921, 922–23 (9th Cir. 1983). But neither have we nor has the Supreme Court previously addressed whether, or in what circumstances, *Heck*'s implicit exception to § 1983 applies to such a claim. Here, we hold that Plaintiff's claims, which challenge just two parole conditions, do not fall within that exception, because a judgment enjoining enforcement of his GPS monitoring requirement and residency restrictions will neither affect the "fact or duration" of his parole nor

---

[5] We discern little, if any, disagreement between our and the dissent's understandings of these governing principles. The dissent discusses the facts of *Dotson* in some detail, but we do not find those facts particularly relevant to this case. In *Dotson*, the plaintiffs were prisoners who sought, in a § 1983 action, relief that would have entitled them to a new parole hearing. They did not challenge any *parole conditions* that might accompany their eventual release from prison.

"necessarily imply" the invalidity of his state-court conviction or sentence.

The only federal court of appeals to have decided how *Heck* applies to a non-physical form of custody is the Seventh Circuit, which addressed the issue in *Drollinger*, 552 F.2d 1220. In dismissing a state probationer's § 1983 claim challenging a condition of her probation, that court identified the crux of the issue: "Because probation is by its nature less confining than incarceration, the distinction between the fact of confinement and the conditions thereof is necessarily blurred." *Id.* at 1225. The same is true of parole. *See Williams*, 336 F.3d at 579 ("For parolees, . . . the 'conditions' of parole *are* the confinement."). But that does not mean that no distinction exists in the parole context between *conditions* of confinement and the *fact* of confinement. Not all parole conditions are essential to the "fact" of a parolee's confinement; and a parolee's challenge to parole terms that are more analogous to "conditions" in the prison context will not speed the parolee's release from parole.[6]

Here, Plaintiff does not challenge his status as a parolee or the duration of his parole, and even if he succeeds in this action, nearly all of his parole conditions will remain in effect. Those conditions include drug and alcohol testing and treatment; psychiatric and behavioral counseling; limitations on travel, employment, association with certain individuals,

---

[6] Indeed, a contrary view would lead to an arbitrary incongruity in the scope of available remedies: Prisoners would have two potential means to challenge aspects of their custody, whereas parolees would have only one. We see no need to allow the *Preiser* exception to swallow the rule that § 1983's broad text provides a remedy for unlawful conditions of confinement.

patronage of certain businesses, and the use of motor vehicles; a curfew; numerous sex-offender registration requirements; a duty not to contact his robbery victim; and other restrictions. In these circumstances, we hold that his challenge to the two conditions does not threaten his "confinement" as a parolee. *See Jones*, 371 U.S. at 242–43 (explaining that the fact of a parolee's custody consists of the cumulative effect of its conditions in "significantly confin[ing] and restrain[ing] his freedom"). Thus, even if the line between conditions of confinement and the fact thereof may be "blurred" in some cases, it is clear that Plaintiff's claims in *this* case do not seek "speedier release" from his confinement within the meaning of *Preiser*'s exception to § 1983.[7]

Moreover, because Plaintiff challenges only the discretionary decisions of the Department in imposing the GPS monitoring and residency restrictions, his success would not imply the invalidity of his conviction or sentence. The focus of the Supreme Court's inquiry in *Heck* was whether a plaintiff's success on a § 1983 claim would call into question a state court's judgment. *See Heck*, 512 U.S. at 484–86 & n.4 (relying on a common-law rule against "collateral attack on [a criminal] conviction through the vehicle of a civil suit" and

---

[7] We need not and do not decide whether we would reach a different result were Plaintiff challenging all or a substantial portion of his parole conditions. The dissent declares our holding "unworkable" because a parolee's challenge to 5, 7, or more parole conditions arguably could amount to a challenge to the fact of his or her parole itself. Like the dissent, we eschew a numerical approach, and we do not rely on the number of conditions challenged to reach our holding. We merely note that Plaintiff's challenge is quite narrow and is focused on the nature of specific conditions of parole, rather than on his parole's existence or its duration.

determining that "§ 1983, which borrowed general tort principles, was not meant to permit such collateral attack" (internal quotation marks omitted)). We have held that a claim does not "necessarily imply" the invalidity of a conviction or sentence under *Heck* unless its success will "inevitably" call into question the state judgment that led to the plaintiff's custody. *Osborne*, 423 F.3d at 1055 (citing *Dotson*, 544 U.S. at 78–82). Consistent with this view, the Seventh Circuit, in *Drollinger*, concluded that habeas relief was the exclusive relief available to challenge a probation condition imposed under Indiana law only after determining that, under state law, the challenged condition was part of the sentence imposed by the state court:

> Our analysis of the Indiana statutes authorizing the granting of probation demonstrates [that] . . . [i]n placing a defendant on probation the trial court is required to impose conditions concerning the manner in which the defendant must conduct himself. . . . [The plaintiff's] challenge to the conditions of her probation is, therefore, an attack on the sentence of the trial court.

552 F.2d at 1224–25 (citations omitted).[8]

---

[8] *Drollinger* was decided before the Supreme Court issued *Heck*, so the Seventh Circuit did not have the benefit of that later decision, which explained *Preiser* in light of a policy of preventing implicit collateral attack on state criminal judgments. But the Seventh Circuit limited its holding to conditions that, under state law, are part of the sentencing court's judgment. Thus, *Drollinger* is consistent with *Heck*.

This case is distinguishable from *Drollinger*, though, because the conditions that Plaintiff challenges were not imposed as part of a court judgment. Rather, the Department imposed the GPS monitoring requirement pursuant to its discretionary authority under section 3010 of the Penal Code, and the Department imposed the residency restriction pursuant to the individualized assessment permitted by section 3000.5(b), as interpreted in *Taylor*, 147 Cal. Rptr. 3d at 67–68. Even if successful, Plaintiff's claims will have no effect on his criminal sentence (a prison term that he has already served), or on the duration of his parole. Because Plaintiff challenges only the discretionary decisions of an administrative body, it is unlike the Indiana probation condition considered in *Drollinger*.[9] And because a judgment in Plaintiff's favor would neither shorten nor alter any sentence or judgment of a state court, it is unlike the administrative proceedings relating to good-time credits that were at issue in *Preiser*. *Cf. Dotson*, 544 U.S. at 82 (holding that *Preiser*'s exception does not bar a § 1983 claim seeking "relief that will render invalid the state procedures" that relate to a prisoner's custody but would not necessarily require early release from the prison sentence). Because his challenge to discretionary decisions of the Department will not affect his court-imposed prison term or result in release from parole, Plaintiff's possible success in this action would not "necessarily imply" the invalidity of any state-court

---

[9] The Seventh Circuit's statement in *Williams* that *Preiser* probably barred a § 1983 challenge to numerous parole conditions is distinguishable. In *Williams*, the court noted that, because the plaintiff was released on parole before serving her full prison sentence, her challenge amounted to "a collateral attack while on parole" to her "unexpired sentences." 336 F.3d at 579. Here, by contrast, Plaintiff has completed his prison term, and he does not challenge his parole itself.

judgment.[10]   We need not and do not decide whether we
would reach a different result had the Department merely
implemented a parole condition that was required by statute
as a direct consequence of a court's judgment of conviction
or sentence.

Furthermore, because Plaintiff's claim, had it been
brought in habeas, likely would proceed under § 2241, *see
Bagley*, 718 F.2d at 922–23, it is a type of habeas claim to
which no court has previously extended *Preiser*'s implicit
exception to the text of § 1983.[11]   We do not rely on this
technical distinction between § 2241 and § 2254 of the habeas
statute in reaching our decision, but we note that the same
consideration drives our reasoning:   that Plaintiff does not

---

[10] The dissent interprets California law, as we do, to delegate to the
Department the *discretionary* authority to choose and impose parole
conditions.  Dissent at 21.  *See also Kevin R. v. Superior Court*, 120 Cal.
Rptr. 3d 549, 554 (Ct. App. 2010) ("The Board has expansive authority to
impose any parole conditions deemed proper.").  Unlike us, though, the
dissent concludes that, in challenging those discretionarily selected parole
conditions, Plaintiff "is challenging a statutorily-mandated component of
his sentence."  Dissent at 22.  We do not agree that such a conclusion
follows from California's delegation to the Department of discretionary
authority to determine parole conditions.

[11] Generally, decisions in which courts have applied *Preiser* to bar a
§ 1983 claim have specifically noted the applicability of 28 U.S.C. § 2254.
*See, e.g.*, *Heck*, 512 U.S. at 480 ("This case lies at the intersection of . . .
42 U.S.C. § 1983[] and . . . 28 U.S.C. § 2254."); *Preiser*, 411 U.S. at 477
("[T]he federal habeas corpus statute, 28 U.S.C. § 2254, clearly provides
a specific federal remedy."); *Osborne*, 423 F.3d at 1053 (noting that the
claim at issue was cognizable under § 2254); *Ramirez v. Galaza*, 334 F.3d
850, 854 (9th Cir. 2003) (same); *Neal v. Shimoda*, 131 F.3d 818, 823 (9th
Cir. 1997) (same); *Fierro v. Gomez*, 77 F.3d 301, 304 (9th Cir. 1996)
(same); *see also McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1094 (9th
Cir. 2004) (noting the plaintiff's concurrent § 2254 habeas action).

challenge a judgment of conviction or a sentence. *Compare* 28 U.S.C. § 2254(a) (providing habeas relief for unlawful "custody pursuant to the judgment of a State court") *with id.* § 2241(c) (providing relief for other forms of unlawful custody).[12]    We need not and do not decide whether the availability of a § 2241 claim may ever bar a parolee from proceeding under § 1983.  It is sufficient that, here, the same reasons that would place Plaintiff's claim within the scope of § 2241 also demonstrate that it is not "a collateral attack on [a] conviction [or sentence] through the vehicle of a civil suit," *Heck*, 512 U.S. at 484, and is therefore different in kind from the types of habeas claims for which the Supreme Court has determined that habeas relief is exclusive.

The dissent asserts that our decision will "muddle the clear line *Heck* and *Dotson* drew," contrary to *Skinner v. Switzer*, 131 S. Ct. 1289, 1298 n.12 (2011).  What the dissent neglects is that the "clear line" that the Supreme Court referred to in *Skinner* is the rule that *Heck* bars a § 1983 action *only if* the action's success will *necessarily* imply the invalidity of a state court's judgment.  *Id.* at 1298–99 (permitting a prisoner's § 1983 claim that sought potentially exonerating DNA testing because success would not "necessarily" imply the invalidity of the prisoner's

---

[12] We have drawn a similar distinction between habeas claims by federal prisoners against federal parole determinations and those that challenge the original sentence. *See Izsak v. Sigler*, 604 F.2d 1205, 1206 n.1 (9th Cir. 1979) ("Habeas corpus, an attack on the legality of incarceration and not a collateral attack on judgment, is the proper vehicle for attacking Parole Commission action. *Andrino v. United States Board of Parole*, 550 F.2d 519 (9th Cir. 1977) [(per curiam)].  A collateral attack on the sentence imposed brought under 28 U.S.C. § 2255 will not lie."); *Andrino*, 550 F.2d at 520 (holding that a habeas petition under § 2241 is the appropriate vehicle for such attacks).

conviction); *see also Nelson v. Campbell*, 541 U.S. 637, 647 (2004) ("[W]e were careful in *Heck* to stress the importance of the term 'necessarily.'"). Here, we *adhere* to the Supreme Court's "clear line." Because his success in this action would not necessarily imply the invalidity of either his conviction or sentence, Plaintiff may proceed under § 1983.

In sum, we hold that a state parolee may challenge a condition of parole under § 1983 if his or her claim, if successful, would neither result in speedier release from parole nor imply, either directly or indirectly, the invalidity of the criminal judgments underlying that parole term. Because Plaintiff challenges just two parole conditions, which were imposed through a discretionary decision of the Department, his success would do neither, and *Heck* does not bar him from proceeding under § 1983.

**REVERSED AND REMANDED.**

IKUTA, Circuit Judge, dissenting:

As a matter of California law, Thornton's challenges, if successful, would necessarily demonstrate that a portion of his underlying sentence was invalid. Because the Supreme Court has held such challenges must be brought in a habeas petition, not under § 1983, I would affirm the district court. In holding otherwise, the majority misunderstands California law, misapplies Supreme Court precedent, and creates a circuit split with the Seventh Circuit.

# I

In 2010, Thornton was convicted of robbery in California state court. He was sentenced under California's determinate sentencing law, Cal. Penal Code § 1170, to a two-year sentence for the robbery offense and a one-year consecutive term for a prior offense. *See* Cal. Penal Code §§ 211, 213 (robbery), 667.5(b) (consecutive term). As required by California law, Cal. Penal Code § 3000(b)(7), the California Department of Corrections and Rehabilitation (the CDCR) defined the term and conditions of Thornton's parole, which included a GPS monitoring requirement and a residency restriction. Thornton challenged these conditions under 42 U.S.C. § 1983 on the grounds that they violated his First, Eighth and Fourteenth Amendment rights, and sought damages and injunctive relief.

# A

Section 1983 provides that: "Every person who, under color of [state law], subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Because Thornton claims that the CDCR, under color of California law, deprived him of his constitutional rights, the plain language of the statute seems applicable.

But beginning with *Preiser v. Rodriguez*, 411 U.S. 475 (1973), the Supreme Court carved out "an implicit exception from § 1983's otherwise broad scope for actions that lie 'within the core of habeas corpus.'" *Wilkinson v. Dotson*, 544 U.S. 74, 79 (2005) (quoting *Preiser*, 411 U.S. at 487). In

*Preiser*, the Court reasoned that "even though the literal terms of § 1983 might seem to cover" a claim, "because Congress has passed a more specific act," namely the federal habeas statute, to cover state prisoners' constitutional challenges to their convictions and sentences, prisoners bringing such claims are limited to habeas relief. 411 U.S. at 489. The Court concluded that any prisoner complaint lying at "the core of habeas corpus" cannot be pursued under § 1983. *Id.*

Following *Preiser*, the Court decided a series of cases spelling out what actions lie within the "core of habeas corpus" and therefore cannot be brought in a § 1983 action. *Dotson*, 544 U.S. at 81–82. Among other limitations, relief under § 1983 is not available for actions that would "*necessarily* imply the unlawfulness of a (not previously invalidated) conviction or sentence" or of "state confinement." *Id.* at 81 (citing *Heck v. Humphrey*, 520 U.S. 477, 481 (1994) and *Edwards v. Balisok*, 520 U.S. 641, 648 (1997)). Summing up, *Dotson* held that "a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Id.* at 81–82. Applying these considerations in the parole context, *Dotson* then analyzed whether the prisoners' challenges to certain parole procedures would necessarily challenge the fact or duration of their confinement. *Id.* Because the prisoners' lawsuits, if successful, would, at most, give them a new parole hearing, *Dotson* determined their challenges did not necessarily imply the invalidity of their sentence or confinement under *Heck*, and therefore could proceed under § 1983. *Id.* at 82–84.

## B

Here, if Thornton were successful in his challenge to the parole conditions imposed by the CDCR, it would necessarily imply the invalidity of a portion of his sentence.

We must look to California law to determine what constitutes Thornton's "sentence." "States are independent sovereigns with plenary authority to make and enforce their own laws," including the definition of crimes and punishments, "as long as they do not infringe on federal constitutional guarantees." *Danforth v. Minnesota*, 552 U.S. 264, 280 (2008); *see also Muhammad v. Close*, 540 U.S. 749, 754 (2004) (looking to state laws governing the effect of prison disciplinary proceedings on good-time credits to determine whether a § 1983 claim was barred under *Heck*). Under section 3000 of the California Penal Code, every sentence imposed on a defendant convicted under California's determinate sentencing law, Cal. Penal Code § 1170, must include a period of parole. Cal. Penal Code § 3000(a)(1) ("A sentence resulting in imprisonment in the state prison pursuant to Section 1168 or 1170 *shall include* a period of parole supervision or postrelease community supervision, unless waived, or as otherwise provided in this article.") (emphasis added). To effectuate this statutory requirement, the CDCR "shall provide" the "conditions of parole and the length of parole up to the maximum period of time provided by law." Cal. Penal Code § 3000(b)(7);[1] *see*

---

[1] Cal. Penal Code § 3000(b)(7) states, in pertinent part:

> The Department of Corrections and Rehabilitation shall meet with each inmate at least 30 days prior to his or her good time release date and shall provide, under

*also Kevin R. v. Super. Ct.*, 191 Cal. App. 4th 676, 684 (2010) (stating that "[t]he [CDCR] has expansive authority to impose any parole conditions deemed proper" in determining this part of a defendant's sentence).

Because Thornton was sentenced under § 1170 for his 2010 robbery offense, his sentence necessarily included the term and conditions of parole set by the CDCR, Cal. Penal Code § 3000(a)(1), (b)(7). In challenging his parole conditions, then, Thornton is challenging a statutorily-mandated component of his sentence, and if he is successful, it would necessarily imply the invalidity of a portion of his sentence. Therefore, under the rules explained in *Dotson*, he may not bring this challenge under § 1983. *See Dotson*, 544 U.S. at 81–83.

## C

Accordingly, the majority errs in concluding that the discretionary conditions of the CDCR are not part of Thornton's sentence. Maj. op. at 15. The root of the majority's error is its ill-founded attempt to distinguish between the fact of parole and its conditions. This is not a distinction that California courts have recognized. Under California law, a parolee in California is confined and "constructively a prisoner" because of the conditions of

---

guidelines specified by the parole authority or the department, whichever is applicable, the conditions of parole and the length of parole up to the maximum period of time provided by law.

Thus, the CDCR has a mandatory statutory obligation to define the conditions and length of parole "under guidelines specified by the parole authority or the department."

parole. *People v. Lewis*, 74 Cal. App. 4th 662, 670 (1999). The California Supreme Court has explained that "[a]lthough a parolee is no longer confined in prison his custody status is one which requires . . . restrictions which may not be imposed on members of the public generally." *People v. Burgener*, 41 Cal. 3d 505, 531 (1986) (in bank). A parolee possesses "not . . . the absolute liberty to which every citizen is entitled, but only . . . the conditional liberty properly dependent on observance of special parole restrictions." *Lewis*, 74 Cal. App. 4th at 670 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 477, 480 (1972)) (internal quotation marks omitted). In sum, California considers parole to be "custody" because of the conditions imposed on the parolee, so there is no basis to conclude that the fact of parole is part of a parolee's sentence but parole conditions are not. *See id*.

Moreover, the majority's attempted distinction is unworkable. The majority holds that there is a difference between conditions that are essential to the "fact" of a parolee's confinement (which cannot be challenged under § 1983) and other conditions that are more analogous to "conditions" of confinement (which can be). Maj. op. at 12–13. The majority acknowledges that "the line between conditions of confinement and the fact thereof may be 'blurred' in some cases," maj. op. at 13, but in doing so profoundly understates the difficulties of discerning which parole conditions would fall on which side of the line, and why. Here, for instance, Thornton challenges the conditions allowing the CDCR to monitor all of his movements by means of a GPS tracker, and barring him from living in certain geographical areas. These constraints on Thornton's physical movements are clearly akin to the "fact" of confinement, yet the majority asserts that Thornton's success on these claims "would not imply the invalidity" of his

sentence.     Maj. op. at 13.     The majority hints its
determination is based "on the nature of specific conditions
of parole," maj. op. at 13 n.7, but does not explain why the
nature of the specific conditions in Thornton's case compels
its conclusion.  To make matters worse, the majority also
suggests that Thornton's challenge to two conditions can
proceed under § 1983 because "nearly all of his parole
conditions will remain in effect" even if Thornton is
successful.     Maj. op. at 12; *see also* maj. op. at 11
(emphasizing that Thornton challenges "just two parole
conditions"); maj. op. at 18 (same).  The majority's emphasis
on the nature and number of challenged parole conditions is
entirely arbitrary.  Would Thornton have been barred from
bringing a § 1983 action if he had challenged five parole
conditions, instead of only two?  If the "nature of specific
conditions of parole," maj. op at 13 n.7, is the key issue, how
do we discern the nature of each condition, what differences
in "nature" are important, and how do we weigh the import of
these differences?  The majority gives no answer.

District courts will have no idea what to make of the
majority's Delphic guidance as they confront § 1983 suits
challenging various kinds and permutations of parole
conditions.  Indeed, the majority's ruling will require the sort
of case-by-case analysis that the Supreme Court recently
rejected in *Skinner v. Switzer*, where it advised courts not "to
muddle the clear line *Heck* and *Dotson* drew" between
challenges that could be brought under § 1983, and those that
could not.  131 S. Ct. 1289, 1298 n.12 (2011).

Finally, the majority's holding is inconsistent with the
only other circuit to have considered this issue.  *See Williams
v. Wisconsin*, 336 F.3d 576, 578–79 (7th Cir. 2003);
*Drollinger v. Milligan*, 552 F.2d 1220 (7th Cir. 1977).  In

*Williams*, the Seventh Circuit held that a parolee could not bring a § 1983 action to challenge a travel restriction imposed as a condition of his parole. 336 F.3d at 578–79. According to the court, because "the 'conditions' of parole *are* the confinement," the parolee's challenge to the travel restriction constituted a collateral attack on his parole, and had to be brought in a petition for habeas corpus. *Id.* at 579. In so holding, the Seventh Circuit relied on its earlier opinion in *Drollinger*, which held that a plaintiff in a § 1983 action could challenge her probation conditions (which under state law were part of her sentence) only by means of a habeas petition. *Drollinger*, 552 F.2d at 1225.[2] The Seventh Circuit's reasoning is directly on point here, and to be consistent with our sister circuit, we should apply the California parole statutes at face value and hold that Thornton's challenges to the GPS requirement and residency restriction are likewise cognizable only in habeas.

## II

In sum, Thornton's challenges to his parole conditions would necessarily imply the partial invalidity of his sentence because parole is a required part of a determinate sentence in California. Therefore, his challenge cannot be brought under § 1983. I respectfully dissent from the majority's conclusion to the contrary, which conflicts with Supreme Court precedent and sister circuit authority.

---

[2] The majority asserts that *Drollinger* is distinguishable because the conditions in that case were imposed "as part of a court judgment," maj. op. at 15. But the Supreme Court has not indicated that it would make any difference under *Heck* whether an agency, rather than a court, establishes the parole conditions that are imposed as part of a sentence under state law, and the majority does not explain why this is significant.