IKUTA, Circuit Judge,
dissenting:
As a matter of California law, Thornton’s challenges, if successful, would necessarily demonstrate that a portion of his underlying sentence was invalid. Because the Supreme Court has held such challenges must be brought in a habeas petition, not under § 1983, I would affirm the district court. In holding otherwise, the majority misunderstands California law, misapplies Supreme Court precedent, and creates a circuit split with the Seventh Circuit.
I
In 2010, Thornton was convicted of robbery in California state court. He was sentenced under California’s determinate sentencing law, CaLPenal Code § 1170, to a two-year sentence for the robbery offense and a one-year consecutive term for a prior offense. See id. §§ 211, 213 (robbery), 667.5(b) (consecutive term). As required by California law, id. § 3000(b)(7), the California Department of Corrections and Rehabilitation (the CDCR) defined the term and conditions of Thornton’s parole, which included a GPS monitoring requirement and a residency restriction. Thornton challenged these conditions under 42 U.S.C. § 1983 on the grounds that they violated his rights under the First, Eighth, and Fourteenth Amendments, and sought damages and injunctive relief.
A
Section 1983 provides that: “Every person who, under color of [state law], subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.” 42 U.S.C. § 1983. Because Thornton claims that the CDCR, under color of California law, deprived him of his constitutional rights, the plain language of the statute seems applicable.
But beginning with Preiser v. Rodriguez, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), the Supreme Court carved out “an implicit exception from § 1983’s otherwise broad scope for actions that lie “within the core of habeas corpus.’ ” Wilkinson v. Dotson, 544 U.S. 74, 79, 125 S.Ct. 1242, 161 L.Ed.2d 253 (2005) (quoting Preiser, 411 U.S. at 487, 93 S.Ct. 1827). In Preiser, the Court reasoned that “even though the literal terms of § 1983 might seem to cover” a claim, “because Congress has passed a more specific act,” namely the federal habeas statute, to cover state prisoners’ constitutional challenges to their convictions and sentences, prisoners bringing such claims are limited to habeas relief. 411 U.S. at 489, 93 S.Ct. 1827. The Court concluded that any prisoner complaint lying at “the core of habeas corpus” cannot be pursued under § 1983. Id.
Following Preiser, the Court decided a series of cases spelling out what actions lie within the “core of habeas corpus” and therefore cannot be brought in a § 1983 action. Dotson, 544 U.S. at 81-82, 125 S.Ct. 1242. Among other limitations, relief under § 1983 is not available for actions that would “necessarily imply the unlawfulness of a (not previously invalidated) conviction or sentence” or of “state confinement.” Id. at 81,125 S.Ct. 1242 (citing Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. *847 2864, 129 L.Ed.2d 883 (1994), and Edwards v. Balisok, 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997)). Summing up, Dotson held that “a state prisoner’s § 1983 action is barred (absent prior invalidation) — no matter the relief sought (damages or equitable relief), no matter the target of the prisoner’s suit (state conduct leading to conviction or internal prison proceedings) — if success in that action would necessarily demonstrate the invalidity of confinement or its duration.” Id. at 81-82, 125 S.Ct. 1242. Applying these considerations in the parole context, Dotson then analyzed whether the prisoners’ challenges to certain parole procedures would necessarily challenge the fact or duration of their confinement. Id. at 82, 125 S.Ct. 1242. Because the prisoners’ lawsuits, if successful, would, at most, give them a new parole hearing, Dotson determined their challenges did not necessarily imply the invalidity of their sentence or confinement under Heck, and therefore could proceed under § 1983. Id. at 82-84, 125 S.Ct. 1242.
B
Here, if Thornton were successful in his challenge to the parole conditions imposed by the CDCR, it would necessarily imply the invalidity of a portion of his sentence.
We must look to California law to determine what constitutes Thornton’s “sentence.” “States are independent sovereigns with plenary authority to make and enforce their own laws,” including the definition of crimes and punishments, “as long as they do not infringe on federal constitutional guarantees.” Danforth v. Minnesota, 552 U.S. 264, 280, 128 S.Ct. 1029, 169 L.Ed.2d 859 (2008); see also Muhammad v. Close, 540 U.S. 749, 754-55, 124 S.Ct. 1303, 158 L.Ed.2d 32 (2004) (looking to state laws governing the effect of prison disciplinary proceedings on good-time credits to determine whether a § 1983 claim was barred under Heck). Under section 3000 of the California Penal Code, every sentence imposed on a defendant convicted under California’s determinate sentencing law, CaLPenal Code § 1170, must include a period of parole. Id. § 3000(a)(1) (“A sentence resulting in imprisonment in the state prison pursuant to Section 1168 or 1170 shall include a period of parole supervision or postrelease community supervision, unless waived, or as otherwise provided in this article.”) (emphasis added). To effectuate this statutory requirement, the CDCR “shall provide ... the conditions of parole and the length of parole up to the maximum period of time provided by law.” Id. § 3000(b)(7);[1] see also Kevin R. v.Super. Ct, 191 Cal. App.4th 676, 684, 120 Cal.Rptr.3d 549 (2010) (stating that “[t]he [CDCR] has expansive authority to impose any parole conditions deemed proper” in determining this part of a defendant’s sentence).[2]
*848 Because Thornton was sentenced under section 1170 for his 2010 robbery offense, his sentence necessarily included the term and conditions of parole set by the CDCR, CaLPenal Code § 3000(a)(1), (b)(7). In challenging his parole conditions, then, Thornton is challenging a statutorily-mandated component of his sentence, and if he is successful, it would necessarily imply the invalidity of a portion of his sentence. Therefore, under the rules explained in Dotson, he may not bring this challenge under § 1983. See 544 U.S. at 81-83, 125 S.Ct. 1242.
C
Accordingly, the majority errs in concluding that the discretionary conditions imposed by the CDCR are not part of Thornton’s sentence. Am. maj. op. at 843-45. The root of the majority’s error is its ill-founded attempt to distinguish between the status of parole and its conditions. The majority analogizes the distinction between the “status” and “conditions” of parole to the distinction between the status of being a prisoner and the conditions of confinement, and asserts that a parolee’s “status” exists regardless of whether the CDCR has imposed or altered conditions. Am. maj. op. at 842-43. Merely restating this argument shows its flaw: A prisoner is confined in prison regardless of any particular condition of confinement, while a parolee is not confined or restricted at all in the absence of parole conditions. Rather, due to the nature of parole, “[t]he elimination or substitution” of one condition would free the parolee “substantially from [his] confinement; figuratively speaking, one of the ‘bars’ would be removed from [the parolee’s] cell.” Drollinger v. Milligan, 552 F.2d 1220, 1225 (7th Cir. 1977). A person’s technical “status” as a parolee has little or no meaning if all the prison bars have been removed.
More important, California courts have not recognized a distinction between the status and conditions of parole. Under California law, a parolee in California is confined and “constructively a prisoner” because of the conditions of parole. People v. Lewis, 74 Cal.App.4th 662, 669, 88 Cal.Rptr.2d 231 (1999). The California Supreme Court has explained that “[a]l-though a parolee is no longer confined in prison his custody status is one which requires ... restrictions which may not be imposed on members of the public generally.” People v. Burgener, 41 Cal.3d 505, 531, 224 Cal.Rptr. 112, 714 P.2d 1251 (1986) (in bank). The United States Supreme Court views the requirement that “the prisoner abide by certain rules” while released from physical custody as “[t]he essence of parole,” Samson v. California, 547 U.S. 843, 850, 126 S.Ct. 2193, 165 L.Ed.2d 250 (2006) (quoting Morrissey v. Brewer, 408 U.S. 471, 477, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)) (internal quotation marks omitted), because the conditions of parole “significantly confine and restrain” a parolee’s freedom to the point where a parolee is “in custody” for habeas purposes like a person confined by prison walls. Jones v. Cunningham, 371 U.S. 236, 243, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963). A parolee possesses “not .... the absolute liberty to which every citizen is entitled, but only ... the conditional liberty properly dependent on observance of special parole restrictions.” Lewis, 74 Cal.App.4th at 670, 88 Cal.Rptr.2d 231 (quoting Morrissey, 408 U.S. at 477, 480, 92 S.Ct. 2593) (internal quotation marks omitted). In sum, California considers parole to be “custody” because of the conditions im *849 posed on the parolee, so there is no basis to conclude that the “status” of being a parolee is part of a defendant’s sentence but parole conditions are not. See id.
Perhaps recognizing that the “status” of parole necessarily evaporates if a released prisoner is no longer subject to any “conditions” of parole, the majority offers a second and inconsistent reason that Thornton’s challenge to two conditions may proceed under § 1983: such an action is permissible because “nearly all of [Thornton’s] parole conditions will remain in effect” even if Thornton is successful. Am. maj. op. at 843; see also am. maj. op. at 841 (emphasizing that Thornton “challenge[s] two parole conditions”); am. maj. op. at 846 (same). Indeed, the majority hints it might “reach a different result were [Thornton] challenging all or a substantial portion of his parole conditions.” Am. maj. op. at 843 n. 9. Yet logically, if the “status” of parole is distinct from the conditions of parole, it should be irrelevant how many conditions Thornton challenges. See Am. maj. op. at 841-42 (indicating that it is the CDCR’s “jurisdiction” that makes the parolee a prisoner, regardless of whether the parolee has successfully challenged any or all of the conditions of parole). Moreover, the majority’s focus on the number of challenged parole conditions is entirely arbitrary. Would Thornton have been barred from bringing a § 1983 action if he had challenged five parole conditions, instead of only two?
Alternatively, the majority suggests that Thornton’s § 1983 action is permissible because Thornton’s “challenge is quite narrow and is focused on the nature of specific conditions of parole.” Am. maj. op at 843 n. 9. But the majority fails to explain what differences in the “nature of specific conditions” are important, and how courts should weigh the import of these differences. Here, for instance, Thornton challenges the conditions allowing the CDCR to monitor all of his movements by means of a GPS tracker, and barring him from living in certain geographical areas. These constraints on Thornton’s physical movements are akin to the fact of actual confinement, Am. maj. op at 842, yet the majority asserts that Thornton’s success on these claims “would not-imply the invalidity” of his sentence, Am. maj. op. at 843.
District courts will have no idea what to make of the majority’s Delphic guidance as they confront § 1983 suits challenging various kinds and permutations of parole conditions. Indeed, the majority’s ruling will require the sort of case-by-case analysis that the Supreme Court recently rejected in Skinner v. Switzer, where it advised courts not “to muddle the clear line Heck and Dotson drew” between challenges that could be brought under § 1983, and those that could not. — U.S. -, 131 S.Ct. 1289, 1298 n. 12, 179 L.Ed.2d 233 (2011).
Finally, the majority’s holding is inconsistent with the only other circuit to have considered this issue. See Williams v. Wisconsin, 336 F.3d 576, 579-80 (7th Cir. 2003); Drollinger, 552 F.2d at 1224-25. In Williams, the Seventh Circuit held that a parolee could not bring a § 1983 action to challenge a travel restriction imposed as a condition of his parole. 336 F.3d at 579-80. According to the court, because “the ‘conditions’ of parole are the confinement,” the parolee’s challenge to the travel restriction constituted a collateral attack on his parole, and had to be brought in a petition for habeas corpus. Id. at 579. In so holding, the Seventh Circuit relied on its earlier opinion in Drollinger, which held that a plaintiff in a § 1983 action could challenge her probation conditions (which under state law were part of her sentence) only by means of a habeas petition. 552 F.2d at 1225.
The majority attempts to distinguish Drollinger because the conditions in that *850 case were imposed “as part of a court judgment.” Am. maj. op. at 844; see also am. maj. op. at 844 n. 12. But the Supreme Court has not indicated that it makes any difference under Heck whether an agency, rather than a court, establishes the parole conditions that are imposed as part of a sentence under state law, and the majority does not explain why this is significant. Moreover, Drollinger itself did not rely on this factor or deem it relevant in its analysis.[3] The Seventh Circuit’s reasoning is directly on point here, and to be consistent with our sister circuit, we should apply the California parole statutes at face value and hold that Thornton’s challenges to the GPS requirement and residency restriction are likewise cognizable only in habeas.
II
In sum, Thornton’s challenges to his parole conditions would necessarily imply the partial invalidity of his sentence because parole is a required part of a determinate sentence in California. Therefore, his challenge cannot be brought under § 1983. I respectfully dissent from the majority’s conclusion to the contrary, which conflicts with Supreme Court precedent and sister circuit authority. States Court of Appeals for the Eighth Circuit, sitting by designation.

. Cal.Penal Code § 3000(b)(7) states, in pertinent part:
The Department of Corrections and Rehabilitation shall meet with each inmate at least 30 days prior to his or her good time release date and shall provide, under guidelines specified by the parole authority or the department, whichever is applicable, the conditions of parole and the length of parole up to the maximum period of time provided by law.
Thus, the CDCR has a mandatory statutory obligation to define the conditions and length of parole "under guidelines specified by the parole authority or the department.”

. The majority observes that the CDCR “may impose or alter conditions at will for the duration of the term of parole," citing the CDCR’s operations manual. Am. maj. op. at 842 n. 7. While it is true that, pursuant to a regulation promulgated under the authority granted by sections 3052 and 5076.2 of the Penal Code, the CDCR must "establish and impose the special conditions of parole” for prisoners sentenced under the determinate sentencing law, like Thornton, Cal.Code Regs, tit. 15, § 2510, that is irrelevant to whether, if *848 successful, his challenges to some of his parole conditions would necessarily imply the invalidity of a portion of his sentence.

. Nor is there any merit to the majority's statement that the Seventh Circuit “extended Drollinger’s rule for probation conditions to the parole context without explaining why that extension was justified,” Am. maj. op. at 844 n. 11. The majority ignores the obvious reason behind the extension: the essence of both probation and parole is that, in exchange for freedom from the physical confinement of prison, an offender must comply with conditions restricting his liberty. Williams, 336 F.3d at 579 ("For parolees, ... the 'conditions' of parole are the confinement.”); Drol-linger, 552 F.2d at 1224 (explaining that a probationer was “in custody” under Jones, 371 U.S. at 243, 83 S.Ct. 373, which addressed parole as "custody,” because "we can discern no significant difference between the statutes of parole and probation with regard to the question of custody”).