**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

WILLIAM CECIL THORNTON,
*Plaintiff-Appellant*,

v.

EDMUND G. BROWN, JR.,* Governor
of California; MATTHEW CATE,
Secretary of Corrections; LEWIS,
John Doe, Parole Unit Supervisor;
MARK JOSEPH, Parole Agent;
CHRISTINE CAVALIN, Parole Agent;
JOHN DOE #1, Parole Agent,
            *Defendants-Appellees*.

No. 11-56146

D.C. No.
3:10-cv-01583-
RBB

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the Southern District of California
Ruben B. Brooks, Magistrate Judge, Presiding

Argued and Submitted
November 9, 2012—Pasadena, California

Filed July 31, 2013
Amended February 18, 2014

* The Honorable Edmund G. Brown, Jr., is substituted for his predecessor, The Honorable Arnold Schwarzenegger, as Governor of California. Fed. R. App. P. 43(c)(2).

Before:  Myron H. Bright,[**] Susan P. Graber,
and Sandra S. Ikuta, Circuit Judges.

Order;
Dissent to Order by Judge O'Scannlain
Opinion by Judge Graber;
Dissent by Judge Ikuta

## SUMMARY[***]

### Civil Rights

The panel replaced the opinion and dissenting opinion, filed on July 31, 2013, and published at 724 F.3d 1255, with an amended opinion and amended dissenting opinion, denied a petition for panel rehearing, denied a petition for rehearing en banc on behalf of the court, and ordered that no further petitions shall be entertained.

In the amended opinion, the panel reversed the district court's order dismissing, pursuant to Fed. R. Civ. P. 12(b)(6), a civil rights action involving a constitutional challenge to the imposition and enforcement of two conditions of plaintiff's parole:  a residency restriction and a requirement that plaintiff submit to electronic monitoring using a Global Positioning System device.  The panel held that because plaintiff challenged two parole conditions, which were imposed

---

[**] The Honorable Myron H. Bright, Senior Circuit Judge for the United States Court of Appeals for the Eighth Circuit, sitting by designation.

[***] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

through a discretionary decision of the Department of Corrections and Rehabilitation, his success would neither result in speedier release from parole nor imply, either directly or indirectly, the invalidity of the criminal judgments underlying that parole term. Therefore *Heck v. Humphrey*, 512 U.S. 477, 487 (1994), did not bar plaintiff from proceeding under 42 U.S.C. § 1983. Dissenting, Judge Ikuta stated that as a matter of California law, plaintiff's challenges, if successful, would necessarily demonstrate that a portion of his underlying sentence was invalid.

Dissenting from the denial of rehearing en banc, Judge O'Scannlain, joined by Judges Bybee, Callahan, Bea and Ikuta, stated that the panel misapplied Supreme Court precedent and created a split with the Seventh Circuit, as described in Judge Ikuta's dissent. He wrote that as a result of the panel's decision, state decisions about parole conditions will now be subject to far-reaching and searching review by federal courts in this circuit. He emphasized the important federalism and practical concerns that warranted rehearing this case en banc.

**COUNSEL**

Karen Gal-Or (argued) and Craig E. Stewart, Jones Day, San Francisco, California, for Plaintiff-Appellant.

Jose A. Zelidon-Zepeda (argued), Deputy Attorney General; Kamala D. Harris, Attorney General of California; Jonathan L. Wolff, Senior Assistant Attorney General; Thomas S. Patterson, Supervising Deputy Attorney General, San Francisco, California, for Defendants-Appellees.

**ORDER**

The opinion and dissenting opinion, filed on July 31, 2013, and published at 724 F.3d 1255, are replaced by the amended opinion and amended dissenting opinion filed concurrently with this order. With these amendments, Judges Bright and Graber have voted to deny the petition for panel rehearing, and Judge Ikuta has voted to grant it. Judge Graber has voted to deny the petition for rehearing en banc, and Judge Bright has so recommended. Judge Ikuta has voted to grant it.

The full court has been advised of the petition for rehearing en banc. A judge of the court called for a vote on whether to rehear the matter en banc. On such vote, a majority of the nonrecused active judges failed to vote in favor of en banc rehearing.

The petition for panel rehearing and petition for rehearing en banc are **DENIED**. No further petitions for panel rehearing or petitions for rehearing en banc shall be entertained.

---

O'SCANNLAIN, Circuit Judge, joined by BYBEE, CALLAHAN, BEA, and IKUTA, Circuit Judges, dissenting from the denial of rehearing en banc:

Today, a panel of our Court disregards the "strong considerations of comity" between federal courts and the States, grasping power for itself where it is "difficult to imagine . . . a State has a stronger interest." *Preiser v. Rodriguez*, 411 U.S. 475, 491–92 (1973). To reach this

result, the panel misapplies Supreme Court precedent and creates a split with the Seventh Circuit, as described in Judge Ikuta's compelling dissent. I write to emphasize the important federalism and practical concerns that warranted rehearing this case en banc.

I

The central question in this appeal is whether William Cecil Thornton may challenge his parole conditions under 42 U.S.C. § 1983 or whether he must instead petition for a writ of habeas corpus. To a casual observer, this issue may appear trivial, but as the relevant statutory framework and Supreme Court precedents make clear, the answer to this question directly implicates our constitutional system's respect for state sovereignty and the limitations Congress has placed on federal judicial power.

As the Supreme Court has observed, federal habeas review "frustrates both the States' sovereign power to punish offenders and their good-faith attempts to honor constitutional rights." *Calderon v. Thompson*, 523 U.S. 538, 555–56 (1998) (internal quotation marks omitted). When a federal court has authority to review state criminal matters, it "intrudes on state sovereignty to a degree matched by few exercises of federal judicial authority." *Harrington v. Richter*, 131 S. Ct. 770, 787 (2011) (quoting *Harris v. Reed*, 489 U.S. 255, 282 (1989) (Kennedy, J., dissenting)).

In order to "confirm that state courts are the principal forum for asserting constitutional challenges" to state confinement, Congress has dramatically restricted federal habeas review. *Id.* A petitioner seeking a writ from a federal court must "first attempt to present his claim in state court."

*Id*. Moreover, a federal court can issue a writ of habeas corpus only where a state court's judgment "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d)(1)–(2). In this way, Congress has curtailed federal judicial interference with a State's "sovereign power to punish offenders." *Thompson*, 523 U.S. at 555.

By contrast, the power of federal courts in § 1983 suits is far greater—and the intrusion on state sovereignty far more significant. Unlike a habeas petitioner, a plaintiff suing under § 1983 bypasses the state court system and goes directly to federal court. *Patsy v. Bd. of Regents*, 457 U.S. 496, 500–01 (1982); *Steffel v. Thompson*, 415 U.S. 452, 472–73 (1974). Absent is the notion that "state proceedings are the central process," as they are in the habeas context. *Richter*, 131 S. Ct. at 787. And whereas federal habeas review entails deference to a state court judgment unless that judgment is "beyond any possibility for fairminded disagreement," *id.*, no such deference to the States exists in § 1983 suits. For these and other reasons, § 1983 suits involve "a basic problem of American federalism," *Monroe v. Pape*, 365 U.S. 167, 222 (1961) (Frankfurter, J., dissenting), and this is especially true in the context of state penal systems. *Cf. Thompson*, 523 U.S. at 555.

Against this background, the implications of the panel's decision for state sovereignty are obvious. State decisions about parole conditions will now be subject to far-reaching and searching review by federal courts in our circuit. Rather

than reserving federal judicial intervention for cases of "extreme malfunctio[n]" of state penal systems, as is the case with habeas review, *Burt v. Titlow*, 134 S. Ct. 10, 16 (2013) (alteration in original) (quoting *Richter*, 131 S. Ct. at 786), federal judicial involvement in the setting of parole conditions will now become routine. As Judge Ikuta's dissent convincingly argues, challenges to parole conditions fall within the purview of the federal habeas statute, with all its attendant limitations on our power. By instead permitting such challenges to be brought under § 1983, the panel has worked "a major new intrusion into state sovereignty under our federal system," *Maine v. Thiboutot*, 448 U.S. 1, 33 (1980) (Powell, J., dissenting), something Congress expressly sought to avoid.

II

The consequences of the panel's decision go beyond its disregard of fundamental federalism principles. One of the key differences between habeas and § 1983 actions is that the latter holds out the prospect of attorney's fees for a prevailing plaintiff. *See* 42 U.S.C. § 1988(b). As federal courts have observed on numerous occasions, awarding attorney's fees in § 1983 litigation encourages would-be plaintiffs to bring suits that might otherwise never make it into court because counsel have a financial incentive to undertake such cases. *See, e.g.*, *Dennis v. Chang*, 611 F.2d 1302, 1306–07 (9th Cir. 1980). That incentive is conspicuously lacking in habeas actions, which means that the likely effect of the panel's decision will be a rush of parolees to the federal courthouse steps.

Given the predictable increase in § 1983 litigation the panel's opinion will produce, one would expect the panel to articulate how litigants and district courts will determine

when a challenge must be brought in habeas. But the panel remains coy, offering only hints at what may or may not be relevant considerations in future cases. The panel's proffered standard is a mystery, one that the district courts of this circuit must struggle now to solve.

I respectfully dissent from our regrettable decision not to rehear this case en banc.

**OPINION**

GRABER, Circuit Judge:

In this civil rights action under 42 U.S.C. § 1983, Plaintiff William Cecil Thornton brings a constitutional challenge to the imposition and enforcement of two conditions of his parole: a residency restriction and a requirement that he submit to electronic monitoring using a Global Positioning System ("GPS") device. Citing *Preiser v. Rodriguez*, 411 U.S. 475, 489–90 (1973), and *Heck v. Humphrey*, 512 U.S. 477, 487 (1994), the district court concluded that habeas corpus provided the exclusive federal remedy for Plaintiff's claims and dismissed the action under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

The Supreme Court has not directly considered the application of the *Heck* doctrine to § 1983 actions that challenge conditions of parole. Among the courts of appeals, only the Seventh Circuit has done so, in *Drollinger v. Milligan*, 552 F.2d 1220 (7th Cir. 1977), which considered conditions of probation, and *Williams v. Wisconsin*, 336 F.3d 576 (7th Cir. 2003), which considered conditions of parole.

Consistent with Supreme Court precedent and that of our sister circuit, we hold that such an action is not barred by *Heck* if it is not a collateral attack on *either* the fact of a parolee's confinement as a parolee *or* the parolee's underlying conviction or sentence. Because we conclude that Plaintiff's action is not such an attack, we reverse and remand.

## BACKGROUND

California's Sex Offender Registration Act requires certain convicted sex offenders to register with law enforcement officials in the communities in which they reside. Cal. Penal Code §§ 290(c), 290.005(a). California's Sexual Predator Punishment and Control Act of 2006—also known as Jessica's Law or Proposition 83—imposes several requirements that apply to parolees who, as sex offenders, are subject to that duty to register. One of those requirements is a residency restriction according to which a person who is required to register may not "reside within 2000 feet of any public or private school, or park where children regularly gather." *Id.* § 3003.5(b). Another requirement is that any person who is convicted of a "registerable sex offense" as defined by section 290(c)—a section which enumerates various sex offenses under California law—must submit to electronic monitoring by a GPS device, either for the duration of that person's parole or for life. *Id.* §§ 3000.07(a), 3004(b). The state's Department of Corrections and Rehabilitation ("the Department") also has discretionary authority to require any parolee to submit to electronic monitoring. *See id.* § 3010(a) (providing that "the [Department] may utilize continuous electronic monitoring to electronically monitor the whereabouts of persons on parole").

In 2011, a California trial court ruled that section 3003.5(b)'s residency restriction, when applied to all registered sex offenders as a "blanket" parole condition, was unconstitutional. *In re Taylor*, 147 Cal. Rptr. 3d 64, 67–68 (Ct. App. 2012). The appellate court affirmed the lower court's order, which prohibited the "blanket enforcement of the residency restriction"; but the court also held that the Department "may, after consideration of a parolee's particularized circumstances, impose a special parole condition that mirrors section 3003.5(b) or one that is more or less restrictive." *Id.* at 83–84.[1]

In 1987, Plaintiff pleaded guilty in Tennessee to sexual battery. In 2006, he was convicted in California of buying or receiving stolen property and was sentenced to a 16-month term of imprisonment. California law requires a period of parole or supervised release following such a prison term, Cal. Penal Code § 3000, and when Plaintiff was released in June 2008, he received a three-year parole term. Citing Plaintiff's previous Tennessee offense, the Department imposed, as parole conditions, a GPS monitoring requirement (pursuant to section 3010 of the Penal Code) and a residency restriction prohibiting him from living within 2000 feet of schools or parks where children gather (pursuant to section 3003.5(b)). Plaintiff was later convicted of robbery and was sentenced to a three-year prison term for that offense, pursuant to California Penal Code section 1170. Again, California law required a term of parole to follow his sentence. Cal. Penal Code § 3000. While he was in prison, the Department issued new parole conditions that would

---

[1] The California Supreme Court has granted the state's petition for review of that ruling. *In re Taylor*, 290 P.3d 1171 (Cal. 2013).

apply upon his release.  Those conditions included the same GPS monitoring requirement and residency restriction.

During his second prison term, Plaintiff filed this action under 42 U.S.C. § 1983, seeking both monetary and injunctive relief.  He alleges that the Department violated his constitutional rights by imposing the GPS monitoring requirement and residency restriction as parole conditions and by enforcing those conditions in an arbitrary or discriminatory manner.  The district court reasoned that, as a parolee, Plaintiff was "in custody" within the meaning of the federal habeas corpus statute, 28 U.S.C. § 2254.  It further reasoned that, under the *Heck* doctrine, a habeas petition is the exclusive means by which Plaintiff can challenge a condition of his parole.  Accordingly, the district court dismissed the claim.

Plaintiff timely appeals.  We review de novo the legal issues presented here.  *Barker v. Riverside Cnty. Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009).

## DISCUSSION

### A.  Immunity

Plaintiff's claims against the Governor, the Secretary of Corrections, and a Parole Unit Supervisor are limited to injunctive relief.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citing Eleventh Amendment considerations and holding that § 1983 does not permit suits for damages against states); *Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997) (holding that "state officials sued in their official capacities are not 'persons' within the meaning of § 1983" except when "sued for

*prospective injunctive relief*").  Neither absolute nor qualified immunity bars Plaintiff's claims against those defendants. *See, e.g.*, *Buckwalter v. Nev. Bd. of Med. Exam'rs*, 678 F.3d 737, 747 (9th Cir. 2012) ("Absolute immunity is not a bar to injunctive or declaratory relief."); *Vance v. Barrett*, 345 F.3d 1083, 1091 n.10 (9th Cir. 2003) ("[A] defense of qualified immunity is not available for prospective injunctive relief.").

Absolute immunity does bar Plaintiff's claims for damages against his parole officers for imposing allegedly unconstitutional parole conditions.  We have held that absolute immunity "extend[s] to parole officials for the 'imposition of parole conditions'" because that task is "integrally related to an official's decision to grant or revoke parole," which is a "quasi-judicial" function.  *Swift v. California*, 384 F.3d 1184, 1189 (9th Cir. 2004) (quoting *Anderson v. Boyd*, 714 F.2d 906, 909 (9th Cir. 1983)).  Both parole conditions currently in effect were imposed through particularized and discretionary decisions by parole officers. The GPS condition was imposed pursuant to the Department's discretionary authority under section 3010 of the California Penal Code,[2] and the residency restriction "mirrors" section 3003.5(b), which, as interpreted by the California courts, permits such a condition only "after consideration of a parolee's particularized circumstances." *Taylor*, 147 Cal. Rptr. 3d at 83–84.  Accordingly, the parole officers are absolutely immune with respect to Plaintiff's

---

[2] Although sections 3000.07(a) and 3004(b) of the Penal Code require the Department to impose a GPS monitoring condition for any parolee convicted of a "registerable sex offense" under section 290(c), that subsection lists only crimes under California law.  Thus, Plaintiff's condition, which relates to a conviction under Tennessee law, reflects an exercise of the Department's discretion under section 3010.

claims for damages arising from the imposition of those conditions.

Absolute immunity does not extend, though, to Plaintiff's claim that the parole officers enforced the conditions of his parole in an unconstitutionally arbitrary or discriminatory manner. Parole officers' "immunity for conduct arising from their duty to supervise parolees is qualified." *Anderson*, 714 F.2d at 910. Plaintiff's allegation that the officers enforced the residency restriction against him but not against similarly situated parolees relates to the manner in which Defendants implemented that condition—an element of their supervisory function. Absolute immunity therefore does not apply to Plaintiff's enforcement-based claim. However, the district court also dismissed this claim as barred by qualified immunity. On appeal, Plaintiff does not challenge that ruling except to the extent that it bars him from pursuing injunctive relief. Because qualified immunity does not bar injunctive relief, *Vance*, 345 F.3d at 1091 n.10, Plaintiff may assert his non-monetary claim arising from the allegedly discriminatory enforcement of his parole conditions.

## B. *Heck* Doctrine

With respect to his claims for injunctive relief, the question remains whether Plaintiff appropriately brought those claims under § 1983 instead of through a petition for habeas corpus.

Persons subject to state custody generally "have two potential avenues to remedy violations of their federal constitutional rights: a habeas petition under 28 U.S.C. § 2254, and a civil suit under 42 U.S.C. § 1983." *Osborne v. Dist. Attorney's Office*, 423 F.3d 1050, 1053 (9th Cir. 2005)

(citing *Heck*, 512 U.S. at 480). In *Preiser*, the Supreme Court addressed "'the extent to which § 1983 is a permissible alternative to the traditional remedy of habeas corpus,'" *Docken v. Chase*, 393 F.3d 1024, 1027 (9th Cir. 2004) (quoting *Preiser*, 411 U.S. at 500), and held that § 1983 implicitly excludes from its coverage claims that lie "within the core of habeas corpus," *Preiser*, 411 U.S. at 487–88.[3] Thus, a person who is in state custody may not use § 1983 to challenge "the very fact or duration of . . . confinement" by seeking "a determination that he is entitled to immediate release or a speedier release from that imprisonment"—for example, an injunction requiring prison officials to grant good-time credits that would shorten his prison term. *Id.* at 499–500. In *Heck*, the Court elaborated on the exception set forth in *Preiser*, holding that a state prisoner may not maintain a § 1983 claim for damages if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence" with respect to a prior judgment that has not been nullified previously. *Heck*, 512 U.S. at 484, 487.

Not all claims that are cognizable in habeas are precluded from § 1983's scope under that standard; rather, there are "instances where the same constitutional rights might be redressed under either form of relief." *Wolff v. McDonnell*, 418 U.S. 539, 579 (1974); *see also Osborne*, 423 F.3d at 1055 (rejecting "the notion that a claim which *can* be brought in

---

[3] The Supreme Court rested this conclusion on its observation that "the language of the habeas statute is more specific, and the writ's history makes clear that it traditionally 'has been accepted as the specific instrument to obtain release from [unlawful] confinement.'" *Wilkinson v. Dotson*, 544 U.S. 74, 79 (2005) (alteration in original) (quoting *Preiser*, 411 U.S. at 486–87).

habeas *must* be brought in habeas").[4]  Thus, the fact that a § 1983 plaintiff is "in custody" and therefore may file a habeas petition challenging the unlawfulness of that custody does not, by itself, determine whether the § 1983 claim is available.  Instead, a claim that meets the statutory criteria of § 1983 may be asserted unless its success would release the claimant from confinement or shorten its duration, *Preiser*, 411 U.S. at 500, or would necessarily imply the invalidity of the conviction or sentence, *Heck*, 512 U.S. at 487.  *See also Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005) (explaining that *Preiser* and *Heck* bar a § 1983 claim only if that claim will either result in a "speedier release" from custody or "a judicial determination that necessarily implies the unlawfulness of the State's custody").[5]

A state parolee is "in custody" for purposes of the federal habeas statute, *Jones v. Cunningham*, 371 U.S. 236, 243 (1963), and may challenge parole conditions imposed by a state correctional department through a habeas petition under 28 U.S.C. § 2241, *Bagley v. Harvey*, 718 F.2d 921, 922–23 (9th Cir. 1983).  But neither we nor the Supreme Court has addressed previously whether, or under what circumstances,

---

[4] *See also Preiser*, 411 U.S. at 499 (noting that habeas and § 1983 may provide alternative means to challenge prison conditions); *Skinner v. Switzer*, 131 S. Ct. 1289, 1299 (2011) (raising, without deciding, the question whether "habeas [is] the sole remedy, or even an available one," for certain types of claims).

[5] We discern little, if any, disagreement between our and the dissent's understandings of these governing principles.  The dissent discusses the facts of *Dotson* in some detail, but we do not find those facts particularly relevant to this case.  In *Dotson*, the plaintiffs were prisoners who sought, in a § 1983 action, relief that would have entitled them to a new parole hearing.  They did not challenge any *parole conditions* that might accompany their eventual release from prison.

*Heck*'s implicit exception to § 1983 applies to such a claim. Here, we hold that Plaintiff's claims, which challenge two parole conditions, do not fall within that exception, because a judgment enjoining enforcement of his GPS monitoring requirement and residency restrictions will neither affect the "fact or duration" of his parole nor "necessarily imply" the invalidity of his state-court conviction or sentence.

The only federal court of appeals to have decided how *Heck* applies to the conditions of a non-physical form of custody is the Seventh Circuit, which addressed the issue in *Drollinger*, 552 F.2d 1220. In dismissing a state probationer's § 1983 claim challenging a condition of her probation, that court identified the crux of the issue: "Because probation is by its nature less confining than incarceration, the distinction between the fact of confinement and the conditions thereof is necessarily blurred."**[6]** *Id.* at 1225. However "blurred" this line might appear at first blush, in California a parolee's status is legally and factually distinct from his conditions of parole. "In California, parolee status carries distinct disadvantages when compared to the situation of the law-abiding citizen." *People v. Lewis*, 88 Cal. Rptr. 2d 231, 236 (Ct. App. 1999). A parolee remains a "prisoner" under California law and is subject at all times to the jurisdiction of the Department, which may impose or alter

---

**[6]** It bears noting that *Drollinger* involved a challenge to a condition of *probation*, a status that the Supreme Court has held to be less akin to imprisonment than parole. *Samson v. California*, 547 U.S. 843, 850 & n.2 (2006) ("As we noted in [*United States v. Knights*, 534 U.S. 112, 119 (2001)], parolees are on the 'continuum' for state-imposed punishments. On this continuum, parolees have fewer expectations of privacy than probationers, because parole is more akin to imprisonment than probation is to imprisonment.")

conditions at will for the duration of the term of parole.[7]  *Id.*
The conditions imposed by the Department, like those
challenged here, are simply an *exercise* of that jurisdiction,
which remains unaffected by even a successful challenge to
particular conditions placed on the parolee.[8]

Moreover, the distinction between the "fact" and
"duration" of imprisonment, on the one hand, and the
"conditions" of imprisonment, on the other hand, is a
distinction that Supreme Court precedent has created:  a
prisoner may challenge the "fact" or "duration" of
imprisonment only through a habeas proceeding, but may
challenge "conditions" of confinement in an action under
§ 1983.  *Heck*, 512 U.S. at 480–81; *Preiser*, 411 U.S. at 500.
Nor is it difficult to apply that distinction in most cases.  *See,
e.g.*, *Roles v. Maddox*, 439 F.3d 1016, 1017–18 (9th Cir.
2006) (holding that a challenge to the confiscation of
magazines in prison pertains to a condition of confinement,
which is properly brought under § 1983, and collecting
cases); *Nonnette v. Small*, 316 F.3d 872, 875 (9th Cir. 2002)
("It has been clear for over thirty years that a state prisoner
seeking injunctive relief against the denial or revocation of

---

[7] *See, e.g.*, *California Department of Corrections and Rehabilitation
Operations Manual* 81010.16.1–19.1 (Jan. 1, 2013) (providing that a
parole agent has the authority to modify or impose new special conditions
orally, at any time, as long as written notice is provided to the parolee
within five days).

[8] Indeed, a contrary view would lead to an arbitrary incongruity in the
scope of available remedies:  Prisoners would have two potential means
to challenge aspects of their custody, whereas parolees would have only
one.  We see no need to allow the *Preiser* exception to swallow the rule
that § 1983's broad text provides a remedy for unlawful conditions of
confinement.

good-time credits must proceed in habeas corpus, and not under § 1983."); *Bennett v. King*, 293 F.3d 1096, 1098 (9th Cir. 2002) (holding that a claim concerning harassment by prison guards is a challenge to a condition of confinement, which is properly brought under § 1983). The same line must be drawn for parole as for incarceration because, as explained above, in California parole is simply a less onerous form of imprisonment and the parolee is still considered a prisoner.

Here, Plaintiff does not challenge his status as a parolee or the duration of his parole and, even if he succeeds in this action, nearly all of his parole conditions will remain in effect. Those conditions include drug and alcohol testing and treatment; psychiatric and behavioral counseling; limitations on travel, employment, association with certain individuals, patronage of certain businesses, and the use of motor vehicles; a curfew; numerous sex-offender registration requirements; a duty not to contact his robbery victim; and other restrictions. In these circumstances, we hold that his challenge to two parole conditions does not threaten his "confinement" as a parolee. *See Jones*, 371 U.S. at 242–43 (explaining that a parolee's "release" into the custody and control of the Parole Board "involves significant restraints on [the parolee's] liberty because of his conviction and sentence, which are in addition to those imposed by the State upon the public generally"). Thus, even if the line between conditions of confinement and the fact thereof may be "blurred" in some cases, it is clear that Plaintiff's claims in *this* case do not seek "speedier release" from his confinement within the meaning of *Preiser*'s exception to § 1983.[9]

---

[9] We need not and do not decide whether we would reach a different result were Plaintiff challenging all or a substantial portion of his parole conditions. The dissent declares our holding "unworkable" because a

Moreover, because Plaintiff challenges only the discretionary decisions of the Department in imposing the GPS monitoring and residency restrictions, his success would not imply the invalidity of his conviction or sentence. The focus of the Supreme Court's inquiry in *Heck* was whether a plaintiff's success on a § 1983 claim would call into question a state court's judgment. *See Heck*, 512 U.S. at 484–86 & n.4 (relying on a common-law rule against "collateral attack on [a criminal] conviction through the vehicle of a civil suit" and determining that "§ 1983, which borrowed general tort principles, was not meant to permit such collateral attack" (internal quotation marks omitted)). We have held that a claim does not "necessarily imply" the invalidity of a conviction or sentence under *Heck* unless its success will "inevitably" call into question the state court judgment that led to the plaintiff's custody. *Osborne*, 423 F.3d at 1055 (citing *Dotson*, 544 U.S. at 78–82). Consistent with this view, the Seventh Circuit, in *Drollinger*, concluded that habeas relief was the exclusive relief available to challenge a probation condition imposed under Indiana law only after determining that, under state law, the challenged condition was part of the sentence imposed by the state court:

> Our analysis of the Indiana statutes authorizing the granting of probation demonstrates [that] . . . [i]n placing a defendant on probation the trial court is

---

parolee's challenge to 5, 7, or more parole conditions arguably could amount to a challenge to the fact of his or her parole itself. Like the dissent, we eschew a numerical approach, and we do not rely on the number of conditions challenged to reach our holding. We merely note that Plaintiff's challenge is quite narrow and is focused on the nature of specific conditions of parole, rather than on his parole's existence or its duration.

> required to impose conditions concerning the manner in which the defendant must conduct himself. . . . [The plaintiff's] challenge to the conditions of her probation is, therefore, an attack on the sentence of the trial court.

552 F.2d at 1224–25 (citations omitted).[10]

This case is distinguishable from *Drollinger*, though, because the parole conditions that Plaintiff challenges were not imposed as part of a court judgment. Rather, the Department imposed the GPS monitoring requirement pursuant to its discretionary authority under section 3010 of the Penal Code, and the Department imposed the residency restriction pursuant to the individualized assessment permitted by section 3000.5(b), as interpreted in *Taylor*, 147 Cal. Rptr. 3d at 67–68. Even if successful, Plaintiff's claims will have no effect on his criminal sentence, including the duration of his parole. Because Plaintiff challenges only the discretionary decisions of an administrative body, it is unlike the Indiana probation condition considered in *Drollinger*.[11] And because a judgment in Plaintiff's favor

---

[10] *Drollinger* was decided before the Supreme Court issued *Heck*, so the Seventh Circuit did not have the benefit of that later decision, which explained *Preiser* in light of a policy of preventing implicit collateral attack on state criminal judgments. But the Seventh Circuit limited its holding to probation conditions that, under state law, were part of the sentencing court's judgment. Thus, *Drollinger* is consistent with *Heck*.

[11] The Seventh Circuit's statement in *Williams* that *Preiser* probably barred a § 1983 challenge to numerous parole conditions extended *Drollinger*'s rule for probation conditions to the parole context without explaining why that extension was justified. *Williams*, 336 F.3d at 579–80. In particular, in *Williams*, the court concluded without discussion that under the state law in question, parole did not exist apart from its

would neither shorten nor alter any sentence or judgment of a state court, it is unlike the administrative proceedings relating to good-time credits that were at issue in *Preiser*. *Cf. Dotson*, 544 U.S. at 82 (holding that *Preiser*'s exception does not bar a § 1983 claim seeking "relief that will render invalid the state procedures" that relate to a prisoner's custody but would not necessarily require early release from the prison sentence). Because his challenge to discretionary decisions of the Department will not affect his court-imposed prison term or result in release from parole, Plaintiff's possible success in this action would not "necessarily imply" the invalidity of any state-court judgment.[12] We need not and do

---

conditions. But as noted, under California law, the status of parole does exist, and has legal consequences, wholly apart from conditions imposed by the Department. Moreover, the court in *Williams* did not address whether the conditions that the parolee challenged were part of the state court's judgment or were instead, as in this case, discretionary conditions imposed by an executive authority. To the extent that our holding is in tension with the Seventh Circuit's decisions in *Drollinger* and *Williams*, we simply are not persuaded by them.

[12] The dissent interprets California law, as we do, to provide the Department with the *discretionary* authority to choose and impose parole conditions. Amended dissent at 27–28; *see also Kevin R. v. Superior Court*, 120 Cal. Rptr. 3d 549, 554 (Ct. App. 2010) ("The power to grant parole, including setting parole conditions, is vested in the board, not the courts."). Unlike us, though, the dissent concludes that in challenging those discretionarily selected parole conditions, Plaintiff "is challenging a statutorily-mandated component of his sentence." Amended dissent at 28. We do not agree that such a conclusion follows. Just as authority is vested in the Department to administer prisons and set prison conditions, so, too, the Department has the authority to administer the parole system, including the imposition and modification of parole conditions. This authority is wholly distinct from the sentencing authority of a state court and does not per se implicate any state court judgment. *See In re Coca*, 149 Cal. Rptr. 465, 471 (Ct. App. 1978) (noting that a court would usurp

not decide whether we would reach a different result had the Department merely implemented a parole condition that was required by statute as a direct consequence of a court's judgment of conviction or sentence.

Furthermore, because Plaintiff's claim, had it been brought in habeas, likely would proceed under § 2241, *see Bagley*, 718 F.2d at 922–23, it is a type of habeas claim to which no court has previously extended *Preiser*'s implicit exception to the text of § 1983.[13]  We do not rely on this technical distinction between § 2241 and § 2254 of the habeas statute in reaching our decision, but we note that the same consideration drives our reasoning:  that Plaintiff does not challenge a judgment of conviction or a sentence. *Compare* 28 U.S.C. § 2254(a) (providing habeas relief for unlawful "custody pursuant to the judgment of a State court") *with id.* § 2241(c) (providing relief for other forms of unlawful

---

the Department's administrative authority to require, for example, new prison facilities to be built).

[13] Generally, decisions in which courts have applied *Preiser* to bar a § 1983 claim have specifically noted the applicability of 28 U.S.C. § 2254. *See, e.g.*, *Heck*, 512 U.S. at 480 ("This case lies at the intersection of . . . 42 U.S.C. § 1983[] and . . . 28 U.S.C. § 2254."); *Preiser*, 411 U.S. at 477 ("[T]he federal habeas corpus statute, 28 U.S.C. § 2254, clearly provides a specific federal remedy."); *Osborne*, 423 F.3d at 1053 (noting that the claim at issue was cognizable under § 2254); *Ramirez v. Galaza*, 334 F.3d 850, 854 (9th Cir. 2003) (same); *Neal v. Shimoda*, 131 F.3d 818, 823 (9th Cir. 1997) (same); *Fierro v. Gomez*, 77 F.3d 301, 304 (9th Cir. 1996) (same); *see also McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1094 (9th Cir. 2004) (noting the plaintiff's concurrent § 2254 habeas action).

custody).[14] We need not and do not decide whether the availability of a § 2241 claim may ever bar a parolee from proceeding under § 1983. It is sufficient that, here, the same reasons that would place Plaintiff's claim within the scope of § 2241 also demonstrate that it is not "a collateral attack on [a] conviction [or sentence] through the vehicle of a civil suit," *Heck*, 512 U.S. at 484, and is therefore different in kind from the types of habeas claims for which the Supreme Court has determined that habeas relief is exclusive.

The dissent asserts that our decision will "muddle the clear line *Heck* and *Dotson* drew," and run contrary to *Skinner v. Switzer*, 131 S. Ct. 1289, 1298 n.12 (2011). Amended dissent at 31 (internal quotation marks omitted). What the dissent neglects is that the "clear line" that the Supreme Court referred to in *Skinner* is the rule that *Heck* bars a § 1983 action *only if* the action's success will *necessarily* imply the invalidity of a state court's judgment. *Id.* at 1298–99 (permitting a prisoner's § 1983 claim that sought potentially exonerating DNA testing because success would not "necessarily" imply the invalidity of the prisoner's conviction); *see also Nelson v. Campbell*, 541 U.S. 637, 647 (2004) ("[W]e were careful in *Heck* to stress the importance of the term 'necessarily.'"). Here, we *adhere* to the Supreme

---

[14] We have drawn a similar distinction between habeas claims by federal prisoners against federal parole determinations and those that challenge the original sentence. *See Izsak v. Sigler*, 604 F.2d 1205, 1206 n.1 (9th Cir. 1979) ("Habeas corpus, an attack on the legality of incarceration and not a collateral attack on judgment, is the proper vehicle for attacking Parole Commission action. *Andrino v. United States Board of Parole*, 550 F.2d 519 (9th Cir. 1977) [(per curiam)]. A collateral attack on the sentence imposed brought under 28 U.S.C. § 2255 will not lie."); *Andrino*, 550 F.2d at 520 (holding that a habeas petition under § 2241 is the appropriate vehicle for such attacks).

Court's "clear line." Because his success in this action would not necessarily imply the invalidity of either his conviction or sentence, Plaintiff may proceed under § 1983.

In sum, we hold that a state parolee may challenge a condition of parole under § 1983 if his or her claim, if successful, would neither result in speedier release from parole nor imply, either directly or indirectly, the invalidity of the criminal judgments underlying that parole term. Because Plaintiff challenges two parole conditions, which were imposed through a discretionary decision of the Department, his success would do neither, and *Heck* does not bar him from proceeding under § 1983.

**REVERSED AND REMANDED.**

IKUTA, Circuit Judge, dissenting:

As a matter of California law, Thornton's challenges, if successful, would necessarily demonstrate that a portion of his underlying sentence was invalid. Because the Supreme Court has held such challenges must be brought in a habeas petition, not under § 1983, I would affirm the district court. In holding otherwise, the majority misunderstands California law, misapplies Supreme Court precedent, and creates a circuit split with the Seventh Circuit.

I

In 2010, Thornton was convicted of robbery in California state court. He was sentenced under California's determinate sentencing law, Cal. Penal Code § 1170, to a two-year

sentence for the robbery offense and a one-year consecutive term for a prior offense. *See id.* §§ 211, 213 (robbery), 667.5(b) (consecutive term). As required by California law, *id.* § 3000(b)(7), the California Department of Corrections and Rehabilitation (the CDCR) defined the term and conditions of Thornton's parole, which included a GPS monitoring requirement and a residency restriction. Thornton challenged these conditions under 42 U.S.C. § 1983 on the grounds that they violated his rights under the First, Eighth, and Fourteenth Amendments, and sought damages and injunctive relief.

A

Section 1983 provides that: "Every person who, under color of [state law], subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Because Thornton claims that the CDCR, under color of California law, deprived him of his constitutional rights, the plain language of the statute seems applicable.

But beginning with *Preiser v. Rodriguez*, 411 U.S. 475 (1973), the Supreme Court carved out "an implicit exception from § 1983's otherwise broad scope for actions that lie 'within the core of habeas corpus.'" *Wilkinson v. Dotson*, 544 U.S. 74, 79 (2005) (quoting *Preiser*, 411 U.S. at 487). In *Preiser*, the Court reasoned that "even though the literal terms of § 1983 might seem to cover" a claim, "because Congress has passed a more specific act," namely the federal habeas statute, to cover state prisoners' constitutional challenges to their convictions and sentences, prisoners bringing such

claims are limited to habeas relief. 411 U.S. at 489. The Court concluded that any prisoner complaint lying at "the core of habeas corpus" cannot be pursued under § 1983. *Id.*

Following *Preiser*, the Court decided a series of cases spelling out what actions lie within the "core of habeas corpus" and therefore cannot be brought in a § 1983 action. *Dotson*, 544 U.S. at 81–82. Among other limitations, relief under § 1983 is not available for actions that would "*necessarily* imply the unlawfulness of a (not previously invalidated) conviction or sentence" or of "state confinement." *Id.* at 81 (citing *Heck v. Humphrey*, 520 U.S. 477 (1994), and *Edwards v. Balisok*, 520 U.S. 641 (1997)). Summing up, *Dotson* held that "a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Id.* at 81–82. Applying these considerations in the parole context, *Dotson* then analyzed whether the prisoners' challenges to certain parole procedures would necessarily challenge the fact or duration of their confinement. *Id.* at 82. Because the prisoners' lawsuits, if successful, would, at most, give them a new parole hearing, *Dotson* determined their challenges did not necessarily imply the invalidity of their sentence or confinement under *Heck*, and therefore could proceed under § 1983. *Id.* at 82–84.

B

Here, if Thornton were successful in his challenge to the parole conditions imposed by the CDCR, it would necessarily imply the invalidity of a portion of his sentence.

We must look to California law to determine what constitutes Thornton's "sentence." "States are independent sovereigns with plenary authority to make and enforce their own laws," including the definition of crimes and punishments, "as long as they do not infringe on federal constitutional guarantees." *Danforth v. Minnesota*, 552 U.S. 264, 280 (2008); *see also Muhammad v. Close*, 540 U.S. 749, 754–55 (2004) (looking to state laws governing the effect of prison disciplinary proceedings on good-time credits to determine whether a § 1983 claim was barred under *Heck*). Under section 3000 of the California Penal Code, every sentence imposed on a defendant convicted under California's determinate sentencing law, Cal. Penal Code § 1170, must include a period of parole. *Id.* § 3000(a)(1) ("A sentence resulting in imprisonment in the state prison pursuant to Section 1168 or 1170 *shall include* a period of parole supervision or postrelease community supervision, unless waived, or as otherwise provided in this article.") (emphasis added). To effectuate this statutory requirement, the CDCR "shall provide . . . the conditions of parole and the length of parole up to the maximum period of time provided by law." *Id.* § 3000(b)(7);[1] *see also Kevin R. v. Super. Ct.*,

---

[1] Cal. Penal Code § 3000(b)(7) states, in pertinent part:

> The Department of Corrections and Rehabilitation shall meet with each inmate at least 30 days prior to his or her good time release date and shall provide, under guidelines specified by the parole authority or the department, whichever is applicable, the conditions of parole and the length of parole up to the maximum period of time provided by law.

Thus, the CDCR has a mandatory statutory obligation to define the conditions and length of parole "under guidelines specified by the parole authority or the department."

191 Cal. App. 4th 676, 684 (2010) (stating that "[t]he [CDCR] has expansive authority to impose any parole conditions deemed proper" in determining this part of a defendant's sentence).**[2]**

Because Thornton was sentenced under section 1170 for his 2010 robbery offense, his sentence necessarily included the term and conditions of parole set by the CDCR, Cal. Penal Code § 3000(a)(1), (b)(7). In challenging his parole conditions, then, Thornton is challenging a statutorily-mandated component of his sentence, and if he is successful, it would necessarily imply the invalidity of a portion of his sentence. Therefore, under the rules explained in *Dotson*, he may not bring this challenge under § 1983. *See* 544 U.S. at 81–83.

C

Accordingly, the majority errs in concluding that the discretionary conditions imposed by the CDCR are not part of Thornton's sentence. Am. maj. op. at 20–22. The root of the majority's error is its ill-founded attempt to distinguish between the status of parole and its conditions. The majority analogizes the distinction between the "status" and

---

**[2]** The majority observes that the CDCR "may impose or alter conditions at will for the duration of the term of parole," citing the CDCR's operations manual. Am. maj. op. at 17 n.7. While it is true that, pursuant to a regulation promulgated under the authority granted by sections 3052 and 5076.2 of the Penal Code, the CDCR must "establish and impose the special conditions of parole" for prisoners sentenced under the determinate sentencing law, like Thornton, Cal. Code Regs. tit. 15, § 2510, that is irrelevant to whether, if successful, his challenges to some of his parole conditions would necessarily imply the invalidity of a portion of his sentence.

"conditions" of parole to the distinction between the status of being a prisoner and the conditions of confinement, and asserts that a parolee's "status" exists regardless whether the CDCR has imposed or altered conditions. Am. maj. op. at 17–18. Merely restating this argument shows its flaw: A prisoner is confined in prison regardless of any particular condition of confinement, while a parolee is not confined or restricted at all in the absence of parole conditions. Rather, due to the nature of parole, "[t]he elimination or substitution" of one condition would free the parolee "substantially from [his] confinement; figuratively speaking, one of the 'bars' would be removed from [the parolee's] cell." *Drollinger v. Milligan*, 552 F.2d 1220, 1225 (7th Cir. 1977). A person's technical "status" as a parolee has little or no meaning if all the prison bars have been removed.

More important, California courts have not recognized a distinction between the status and conditions of parole. Under California law, a parolee in California is confined and "constructively a prisoner" because of the conditions of parole. *People v. Lewis*, 74 Cal. App. 4th 662, 669 (1999). The California Supreme Court has explained that "[a]lthough a parolee is no longer confined in prison his custody status is one which requires . . . restrictions which may not be imposed on members of the public generally." *People v. Burgener*, 41 Cal. 3d 505, 531 (1986) (in bank). The United States Supreme Court views the requirement that "the prisoner abide by certain rules" while released from physical custody as "[t]he essence of parole," *Samson v. California*, 547 U.S. 843, 850 (2006) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 477 (1972)) (internal quotation marks omitted), because the conditions of parole "significantly confine and restrain" a parolee's freedom to the point where a parolee is "in custody" for habeas purposes like a person confined by prison walls.

*Jones v. Cunningham*, 371 U.S. 236, 243 (1963). A parolee possesses "not . . . the absolute liberty to which every citizen is entitled, but only . . . the conditional liberty properly dependent on observance of special parole restrictions." *Lewis*, 74 Cal. App. 4th at 670 (quoting *Morrissey*, 408 U.S. at 477, 480) (internal quotation marks omitted). In sum, California considers parole to be "custody" because of the conditions imposed on the parolee, so there is no basis to conclude that the "status" of being a parolee is part of a defendant's sentence but parole conditions are not. *See id*.

Perhaps recognizing that the "status" of parole necessarily evaporates if a released prisoner is no longer subject to any "conditions" of parole, the majority offers a second and inconsistent reason that Thornton's challenge to two conditions may proceed under § 1983: such an action is permissible because "nearly all of [Thornton's] parole conditions will remain in effect" even if Thornton is successful. Am. maj. op. at 18; *see also* am. maj. op. at 16 (emphasizing that Thornton "challenge[s] two parole conditions"); am. maj. op. at 24 (same). Indeed, the majority hints it might "reach a different result were [Thornton] challenging all or a substantial portion of his parole conditions." Am. maj. op. at 18 n.9. Yet logically, if the "status" of parole is distinct from the conditions of parole, it should be irrelevant how many conditions Thornton challenges. *See* Am. maj. op. at 16–17 (indicating that it is the CDCR's "jurisdiction" that makes the parolee a prisoner, regardless whether the parolee has successfully challenged any or all of the conditions of parole). Moreover, the majority's focus on the number of challenged parole conditions is entirely arbitrary. Would Thornton have been barred from bringing a § 1983 action if he had challenged five parole conditions, instead of only two?

Alternatively, the majority suggests that Thornton's § 1983 action is permissible because Thornton's "challenge is quite narrow and is focused on the nature of specific conditions of parole." Am. maj. op at 19 n.9. But the majority fails to explain what differences in the "nature of specific conditions" are important, and how courts should weigh the import of these differences. Here, for instance, Thornton challenges the conditions allowing the CDCR to monitor all of his movements by means of a GPS tracker, and barring him from living in certain geographical areas. These constraints on Thornton's physical movements are akin to the fact of actual confinement, Am. maj. op at 17, yet the majority asserts that Thornton's success on these claims "would not imply the invalidity" of his sentence, Am. maj. op. at 19.

District courts will have no idea what to make of the majority's Delphic guidance as they confront § 1983 suits challenging various kinds and permutations of parole conditions. Indeed, the majority's ruling will require the sort of case-by-case analysis that the Supreme Court recently rejected in *Skinner v. Switzer*, where it advised courts not "to muddle the clear line *Heck* and *Dotson* drew" between challenges that could be brought under § 1983, and those that could not. 131 S. Ct. 1289, 1298 n.12 (2011).

Finally, the majority's holding is inconsistent with the only other circuit to have considered this issue. *See Williams v. Wisconsin*, 336 F.3d 576, 579–80 (7th Cir. 2003); *Drollinger*, 552 F.2d at 1224–25. In *Williams*, the Seventh Circuit held that a parolee could not bring a § 1983 action to challenge a travel restriction imposed as a condition of his parole. 336 F.3d at 579–80. According to the court, because "the 'conditions' of parole *are* the confinement," the

parolee's challenge to the travel restriction constituted a collateral attack on his parole, and had to be brought in a petition for habeas corpus. *Id.* at 579. In so holding, the Seventh Circuit relied on its earlier opinion in *Drollinger*, which held that a plaintiff in a § 1983 action could challenge her probation conditions (which under state law were part of her sentence) only by means of a habeas petition. 552 F.2d at 1225.

The majority attempts to distinguish *Drollinger* because the conditions in that case were imposed "as part of a court judgment." Am. maj. op. at 20; *see also* am. maj. op. at 21 n.12. But the Supreme Court has not indicated that it makes any difference under *Heck* whether an agency, rather than a court, establishes the parole conditions that are imposed as part of a sentence under state law, and the majority does not explain why this is significant. Moreover, *Drollinger* itself did not rely on this factor or deem it relevant in its analysis.[3] The Seventh Circuit's reasoning is directly on point here, and to be consistent with our sister circuit, we should apply the California parole statutes at face value and hold that

---

[3] Nor is there any merit to the majority's statement that the Seventh Circuit "extended *Drollinger*'s rule for probation conditions to the parole context without explaining why that extension was justified," Am. maj. op. at 20 n.11. The majority ignores the obvious reason behind the extension: the essence of both probation and parole is that, in exchange for freedom from the physical confinement of prison, an offender must comply with conditions restricting his liberty. *Williams*, 336 F.3d at 579 ("For parolees, . . . the 'conditions' of parole *are* the confinement."); *Drollinger*, 552 F.2d (explaining that a probationer was "in custody" under *Jones*, 371 U.S. at 243, which addressed parole as "custody," because "we can discern no significant difference between the statutes of parole and probation with regard to the question of custody").

Thornton's challenges to the GPS requirement and residency restriction are likewise cognizable only in habeas.

## II

In sum, Thornton's challenges to his parole conditions would necessarily imply the partial invalidity of his sentence because parole is a required part of a determinate sentence in California. Therefore, his challenge cannot be brought under § 1983. I respectfully dissent from the majority's conclusion to the contrary, which conflicts with Supreme Court precedent and sister circuit authority.